[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 16, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-14190
Non-Argument Calendar

_____

BIA No. A79-087-048

CHAN JUN YU,

                                                            Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                            Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

(March 16, 2006)

Before TJOFLAT, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Chan Jun Yu, a native and citizen of China, entered the United States illegally in October 1997. She was taken into custody and promptly deported to China. On her arrival there, the Chinese government detained her until her family paid a fine for her release. Yu left China again, and illegally entered the United States on December 1, 1998. She received a Notice to Appear, dated June 11, 2001, which stated that she was an alien who had not been admitted into the United States or paroled into the United States by the Attorney General and thus was subject to removal under the Immigration and Nationality Act (INA). Represented by counsel, Yu appeared before an Immigration Judge (IJ) on October 24, 2001, conceded removability and asked for asylum, withholding of removal under the INA, and protection under the United Nations Convention Against Torture (CAT).

On March 28, 2003, Yu, still represented by counsel, filed an application for asylum, withholding of removal under the INA and CAT protection. In her application, Yu stated that she was married and had one child, born in the United States. She stated that she returned to this country in December 1998 because she "wanted to have a better life," and that her mother had borrowed a total of $58,000 to pay a "snakehead" for getting her to the United States. She feared that if returned to China, she and her mother would be "threatened and harassed by loan sharks" who have connections with the government. Although she had never been mistreated or threatened by Chinese authorities, Yu believed that if she were

2

returned to China, she would be fined, jailed, tortured and mentally abused because she had left the country "without permission."

A total of four removal hearings were held on Yu's application, the last taking place on February 26, 2004.[1] After receiving evidence, including Yu's testimony, the IJ denied her application for asylum, withholding of removal and CAT relief. The IJ found that Yu was ineligible for asylum because she had not met the one-year filing requirement of 8 U.S.C. § 1158(a)(2)(B), and that nothing Yu had introduced supported her request for withholding of removal or CAT relief.

Yu appealed the IJ's decision to the Board of Immigration Appeals (BIA). The BIA adopted the decision and summarily affirmed. Addressing Yu's claim (raised for the first time at the February 26, 2004 hearing) that China's birth control policies provided a basis for asylum, withholding of removal and CAT protection, the BIA said this:

> We also agree that [Yu] did not meet her burden of proof . . . to establish past persecution or a clear probability of persecution or torture were she returned to China. [Yu] did not provide any support for her proposition that she would be subject to coercive population control policies because of the birth of one child born abroad. Furthermore, such a claim is speculative. As to [Yu's] illegal entry claim, [Yu] did not meet her burden to show that she would be subject to punishment that is not

---

[1] The time lapse between the October 24, 2001 hearing on the Notice to Appear and the February 26, 2004 hearing on Yu's application for asylum, withholding of removal and CAT relief is irrelevant to the issues before us.

3

> legitimate government prosecution. . . . Accordingly, her appeal is dismissed.

Yu now petitions this court for review,[2] contending that the BIA abused its discretion by affirming the IJ's decision denying her application for withholding of removal and CAT relief.[3]

Addressing her application for withholding of removal and CAT relief, Yu first argues that the IJ erred by finding that she failed to show past persecution and a "clear probability" of future persecution on account of her political opinion. She insists that the detention and mistreatment she received upon her return to China from the United States in 1997, and her opposition to China's family planning policy that "may" have led to that detention and mistreatment, evidences this clear

---

[2]On May 11, 2005, Congress passed, and the President signed into law, the REAL ID Act of 2005, which amended the INA's rules governing judicial review. See REAL ID Act of 2005, Pub.L. 109-13, 119 Stat. 231. The Act made the permanent rules applicable to all petitions for review, providing that any petition for review "filed under former section 106(a) of the Immigration and Nationality Act (as in effect before its repeal by section 306(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (8 U.S.C. 1252 note)) shall be treated as if it had been filed as a petition for review under section 242 of the Immigration and Nationality Act (8 U.S.C. 1252)." Id. § 106(d), 119 Stat. 231, 311.

[3]Yu's brief does not challenge the IJ's asylum decision; Yu therefore has abandoned this issue. Al Najjar v. Ashcroft, 257 F.3d 1262, 1282 n. 12 (11th Cir. 2001) (holding that arguments not raised in the initial brief on appeal are deemed abandoned)). Even if Yu had not abandoned this issue, we would lack jurisdiction to consider it because the IJ determined that it was time-barred. See Chacon-Botero v. Attorney General, 427 F.3d 954, 957 (11th Cir. 2005) (determining that, despite the expansion of jurisdiction provided by the REAL ID Act, as codified at 8 U.S.C. § 1252(a)(2)(D), we still lack jurisdiction to address time-bar issues, which are neither constitutional nor questions of law). Moreover, she also failed to exhaust this issue by raising it before the BIA, so we lack jurisdiction to consider it for this reason as well. See Asencio v. I.N.S., 37 F.3d 614, 615-16 (11th Cir. 2001).

probability. She disregarded that policy by giving birth in the United States without China's permission.

Second, Yu argues that she demonstrated eligibility for withholding of removal based upon her membership in a social group, "repatriated ex visa violators." She asserts that "the Chinese government has exhibited a pattern and practice of excessively punishing those who have been repatriated after an illegal departure," a practice that led to her punishment for leaving the country illegally in 1997.

Third, turning to her application for relief under CAT, Yu claims that the IJ erred by finding that she failed to show that it was more likely than not that she would be tortured upon her return to China. In this respect, she asserts that her prior detainment and mistreatment constituted torture.

We review the BIA's decision "except to the extent that it expressly adopts the IJ's opinion." Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (internal citations omitted). Here, the BIA adopted the IJ's decision in full; hence, we review the IJ's decision. Al Najjar, 257 F.3d at 1284. (internal citations omitted). The IJ's findings of fact are considered under the substantial evidence test. The IJ's decision will be affirmed "if supported by reasonable, substantial, and probative evidence on the record considered as a whole." Forgue v. Attorney General, 401 F.3d 1282, 1286 (11th Cir. 2005). "To reverse the IJ's decision, we

must conclude that the record not only supports such a conclusion, but <u>compels</u> it."

<u>Yang</u>, 418 F.3d at 1202 (emphasis in original) (quotation omitted).

An alien is entitled to withholding of removal under the INA if she can show that her life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. <u>Mendoza v. Attorney General</u>, 327 F.3d 1283, 1287 (11th Cir. 2003); <u>see</u> INA § 241(b)(3), 8 U.S.C. § 1231(b)(3).

With respect to persecution for political opinion, the statute provides that:

> A person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure <u>or for other resistance to a coercive population control program</u>, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

INA § 101(a)(42)(B), 8 U.S.C.A. § 1101 (a)(42)(B) (in an asylum context) (emphasis added).

The BIA has defined persecution on account of "membership in a particular social group" as "persecution that is directed toward an individual who is a member of a group of persons all of whom share a common, immutable characteristic." <u>Matter of Acosta</u>, 19 I. & N. Dec. 211, 233 (BIA 1985), <u>overruled</u>

6

on other grounds by Matter of Mogharrabi, 19 I. & N. Dec. 439 (BIA 1987). The "immutable characteristic" has to be "one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." Acosta, 19 I. & N. Dec. at 233.

The alien also bears the burden of demonstrating that it is "more likely than not" that she will be persecuted or tortured upon being returned to her country. Fahim v. Attorney General, 278 F.3d 1216, 1218 (11th Cir. 2002). If the alien "is unable to meet the 'well-founded fear' standard for asylum, [s]he is generally precluded from qualifying for either asylum or withholding of deportation."[4] Al Najjar, 257 F.3d at 1292-93 (internal quotations omitted).

Unlike withholding of removal, the CAT does not require that the torture be motivated by race, religion, nationality, membership in a particular social group, or political opinion. Nevertheless, torture "does not include pain or suffering arising only from, inherent in, or incidental to lawful sanctions." 8 C.F.R. § 208.18(a)(3).

---

[4] To be eligible for asylum, the alien must show that she is "unable or unwilling" to return to her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). A "well-founded fear" of persecution may be established by showing (1) past persecution that creates a presumption of a well-founded fear and overcomes any rebuttal, (2) a reasonable possibility of personal persecution that cannot be avoided by relocating within the subject country, or (3) a pattern or practice in the subject country of persecuting members of a statutorily defined group of which the alien is a member. 8 C.F.R. § 208.13(b)(1), (2).

7

Lawful sanctions include judicially imposed sanctions and other law enforcement sanctions.  Id.; see Zhang v. Gonzales, 432 F.3d 339, 345 (5th Cir. 2005) (persuasive authority) (stating that the court was not compelled to find it more likely than not that the petitioner would be tortured, in part, for violating Chinese immigration laws, because "normal incidents of lawful sanctions do not constitute torture").

As to Yu's petition for withholding of removal, the record does not compel reversal of the IJ's finding that she failed to show that if returned to China, she more likely than not would be persecuted on account of her political opinion or membership in a particular social group.  First, Yu did not claim in her asylum application that she left China due to her opposition to the country's family planning policy or membership in any particular social group.  Indeed, the only bases for relief set forth in her application were that (1) she left China without permission, and (2) she would be unable to repay the money borrowed to travel to the United States in both 1997 and 1998.

Second, at her removal hearing, Yu testified that she was imprisoned, beaten, and fined upon reentry into China in 1997, in part, because she left the country illegally.  She also indicated that she feared return to China for a monetary reason, specifically, her inability to repay the large debt incurred so she could come to the United States.  Yu did say – at the February 26, 2004 hearing – that

8

she disagreed with China's family planning policy. The IJ's finding that her disagreement with the family planning policy did not cause her past imprisonment or her alleged fear of future persecution, however, is supported by substantial evidence – in particular, the evidence establishing that the imprisonment was due to her having left the country illegally and failing to pay her debts. See Mendoza, 327 F.3d at 1287. In sum, Yu failed to demonstrate that it is "more likely than not" that she would be persecuted for giving birth in the United States without permission or her disagreement with China's family planning policy. See Fahim, 278 F.3d at 1218. For the same reasons, the IJ's rejection of her argument that she was entitled to withholding of removal based upon her political opinion – her resistance to the family planning policy – is also supported by substantial evidence. See INA § 101(a)(42)(B), 8 U.S.C.A. § 1101 (a)(42)(B); Yang, 418 F.3d at 1203-05.

Finally, Yu's claim that she was entitled to withholding of removal based upon membership in a particular social group fails for three reasons. First, Yu did not contend before the IJ or the BIA that she was a member of a protected social group by virtue of her status as a repatriated ex visa violator. Yu did argue before the BIA that she was a member of an arguably different social group – women of childbearing age who oppose China's family planning policies – but she did not raise this "repatriated ex visa violator" group issue before the IJ. Indeed, she cites

9

this specific category as a "social group" for the first time on appeal, as a basis for withholding of removal. Accordingly, to the extent she failed to exhaust all administrative remedies on this claim, we lack jurisdiction to consider the argument. See Fernandez-Bernal v. Attorney General, 257 F.3d 1304, 1317 n.13 (11th Cir. 2001); see INA § 242, 8 U.S.C. § 1252(d)(1) (a court may review a final order of removal only if the alien has exhausted all administrative remedies available to the alien as of right).

Finally, substantial evidence supports the determination that Yu failed to demonstrate eligibility for CAT protection because she introduced no proof that she would face torture if returned to China. Even if she demonstrated that she would more likely than not be subjected to "severe pain or suffering," it appears, as noted by the BIA, that the sanctions to which she might be subject are due to her leaving the country illegally or failing to pay her debts are "lawful," and, therefore, not tortuous. See 8 C.F.R. § 208.18(a)(3); Zhang, 432 F.3d at 345.

PETITION DENIED.