# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 6, 2014

Lyle W. Cayce
Clerk

No. 13-60281

MIRZA NOORALI HUSSAIN; AMAN MIRZA HUSSAIN; KHATIDJA MIRZA HUSSAIN,

Petitioners,

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL,

Respondent.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A088 197 874
BIA No. A088 580 875
BIA No. A088 580 876

Before BARKSDALE, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

Petitioners Mirza Noorali Hussain, Aman Mirza Hussain, and Khatidja Mirza Hussain seek review of the order of the Board of Immigration Appeals (BIA) dismissing their appeal and affirming the order of an Immigration Judge (IJ) denying their applications for withholding of removal and protection under

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-60281

the Convention Against Torture (CAT).  The Hussains, who are citizens of Pakistan, argue that the BIA erred in affirming the IJ's denial of their applications because they presented evidence that they suffered past persecution on account of their religion and that there is a clear probability of their persecution or torture if they return to Pakistan.  We deny the petition.

## I

The Hussains arrived in the United States from Pakistan in 2000.  They were granted visas to stay for one year but were denied visas the following year.  In 2009, the Department of Homeland Security (DHS) served the Hussains with notices to appear before the Immigration Court, charging them with removability because they had remained in the United States for a longer time than permitted.  Their cases were consolidated before an IJ.  The Hussains conceded their removability, but applied for withholding of removal and CAT protection.  They claimed that they feared persecution and torture in Pakistan based upon their religion and/or their membership in a particular social group because of their status as Ismaili Muslims.

At the hearing before the IJ, Noorali Hussain[1] testified on behalf of all three applicants.  He testified that he, his wife Khatidja, and his son Aman were members of the Ismaili Muslim sect of Shi'a Islam, a religious minority in Pakistan.  Noorali Hussain recounted various negative experiences that he attributed to being Ismaili.  He testified that when he was a child, he was slapped by Sunni children and called a "kafir" (a non-believer) and was later denied admission to two colleges.  His daughter, who is not a petitioner in this matter, was assaulted by a Sunni teacher, who pulled her earrings, causing her earlobes to bleed.  Khatidja Hussain was robbed on multiple occasions,

---

[1] The Hussains' brief refers to Mirza Noorali Hussain as Noorali Hussain, and so we will refer to him in that way as well.

2

including twice when a gold chain was taken from her neck and the thief, wearing a turban and large beard in the style of members of the Sunni faith, called her a prostitute and threatened to kill her. Her car was also hit with a brick while she was driving, thrown by a man with a turban and a beard riding in a bus next to her. In 1997 or 1998, when Aman Hussain was eight or nine years old, four men wearing black turbans attempted to kidnap him while he was walking to worship with his father and brother. The men drove up in a car, opened the door, and attempted to pull Aman in, but they were stopped when other people in the area intervened. Noorali Hussain also testified that on one occasion in 1996, three men belonging to the Muhaji Quami Movement (MQM), a Sunni organization, entered a factory he owned carrying handguns and demanded a donation to their organization. When Noorali Hussain refused, one of the men displayed the handgun and threatened to close down the factory and threatened Noorali Hussain's wife and children. Noorali Hussain then gave the men 15,000 rupees. One week later, four men belonging to another Sunni organization—Jamat-i-Islami—came to the factory and demanded that Noorali Hussain pay them what he had given to the MQM. One of the men displayed a gun, slapped Noorali Hussain, called him a non-believer, and threatened to kill him if he did not pay them. Noorali Hussain paid the men and subsequently closed that factory. None of these incidents was reported to the police, although the Hussains did contact the daughter's school in response to the teacher's abuse. Noorali Hussain also testified that twice in 1997 and once in 1998 or 1999, the Jamat Khanna where he and his family worshipped was evacuated because of bomb threats. On at least one of these occasions, an explosive device was found.

Noorali Hussain explained that after the terrorist attacks of September 11, the situation in Pakistan has deteriorated and become worse for religious minorities. As evidence of this, Noorali Hussain stated that he knew of two

No. 13-60281

children who had been kidnapped and held for ransom and that during a recent day of celebration for Ismailis, all of the Jamat Khannas in Pakistan were forcibly closed when individuals carrying weapons stood in front of the prayer halls. Noorali Hussain also testified that after he came to the United States the MQM had returned to his place of business, which was being operated by his brother, and demanded 25,000 rupees. However, on Noorali Hussain's advice, one of his employees reported the incident to the electronics association to which the business belonged, and there were no further incidents.

After hearing Noorali Hussain's testimony, the IJ issued an oral decision denying the Hussains' applications for withholding of removal and protection under the CAT because the applicants had failed to establish past persecution or a clear probability of future persecution on the basis of a protected ground, and because they had not shown that it was more likely than not that the Pakistani government would subject them to torture or acquiesce in their torture by others. The Hussains appealed the decision to the BIA, which affirmed the IJ's decision. The Hussains now petition for review of the BIA's order affirming the IJ's denial of their applications.

## II

The Hussains argue that the BIA erred in determining that they were not eligible for withholding of removal. When, as here, the BIA's decision is impacted by the rulings and findings of the IJ, we review the IJ's findings directly.[2] Whether an applicant is eligible for withholding of removal is a factual determination that we review under the highly deferential substantial evidence standard.[3] Under this standard, "[t]he IJ's findings of fact are

---

[2] *Efe v. Ashcroft*, 293 F.3d 899, 903 (5th Cir. 2002).

[3] *Bouchikhi v. Holder*, 676 F.3d 173, 181 (5th Cir. 2012); *Tamara-Gomez v. Gonzales*, 447 F.3d 343, 347 (5th Cir. 2006).

4

conclusive 'unless any reasonable adjudicator would be *compelled* to conclude to the contrary . . . .'"[4] Our independent determination that the evidence *could* support a contrary decision is insufficient to warrant reversal.[5]

To be eligible for withholding of removal, an applicant must demonstrate a clear probability of persecution upon return to his home country.[6] If an applicant establishes past persecution, he is entitled to a rebuttable presumption that he would face future persecution upon his return.[7] "A clear probability means that it is more likely than not that the applicant's life or freedom would be threatened by persecution on account of either his race, religion, nationality, membership in a particular social group, or political opinion."[8] An applicant must establish that one of these protected grounds "'was or will be at least *one central reason for persecuting* the applicant.'"[9] As the BIA has explained, this means that race, religion, nationality, membership in a particular social group, or political opinion "cannot be incidental, tangential, superficial, or subordinate to another reason for harm."[10] The burden of proof is on the applicant to show that "the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion."[11]

The Hussains contend that the IJ summarily and erroneously determined that the incidents of abuse were not egregious enough to constitute

---

[4] *Bouchikhi*, 676 F.3d at 181 (emphasis added) (quoting 8 U.S.C. § 1252(b)(4)(B); *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006)).

[5] *Zhang v. Gonzales*, 432 F.3d 339, 344 (5th Cir. 2005).

[6] *Roy v. Ashcroft*, 389 F.3d 132, 138 (5th Cir. 2004).

[7] *See* 8 C.F.R. § 208.16(b)(1)(i).

[8] *Roy*, 389 F.3d at 138.

[9] *Shaikh v. Holder*, 588 F.3d 861, 864 (5th Cir. 2009) (quoting 8 U.S.C. § 1158(b)(1)(A)).

[10] *In re J-B-N- & S-M-*, 24 I. & N. Dec. 208, 214 (BIA 2007).

[11] *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006).

past persecution.  We disagree.  First, a review of the IJ's decision reveals that its recounting of the various incidents suffered by the Hussains spans three and one-half pages that are followed by an application of this circuit's law to the facts as discussed.  Rather than ignoring or summarily dismissing the harms suffered by the Hussains, the IJ noted that they had suffered various physical abuses, along with harassments and threats, which were "understandably traumatic"; however, the IJ determined that these events simply did not rise to the level of "extreme conduct" that constitutes persecution.  Second, as the IJ correctly stated, "[p]ersecution cannot be based on mere denigration, harassment, and threats,"[12] and "is an extreme concept that does not include every sort of treatment our society regards as offensive."[13] The abuses suffered by the Hussains, while certainly reprehensible, did not cause any serious injury.  Additionally, the incidents that rose above verbal harassment appear to have been discrete events that occurred over a period of many years.  The Hussains cite to cases from other circuits to support the proposition that even infrequent incidents may be sufficient to constitute persecution; however, the applicants in those cases endured more severe abuse than that faced by the Hussains.[14]  The Hussains correctly assert that the harm they suffered was more substantial than that at issue in the cases cited

---

[12] *Tesfamichael v. Gonzales*, 469 F.3d 109, 116 (5th Cir. 2006) (internal quotation marks omitted).

[13] *Eduard v. Ashcroft*, 379 F.3d 182, 187 n.4 (5th Cir. 2004) (internal quotation marks omitted).

[14] *See Nakibuka v. Gonzales*, 421 F.3d 473, 475-78 (7th Cir. 2005) (holding that incident when applicant was tied up overnight in manner that caused her excruciating pain, had a gun put to her head, and was threatened with imminent rape was serious enough to constitute past persecution); *Corado v. Ashcroft*, 384 F.3d 945, 946-47 (8th Cir. 2004) (per curiam) (holding that applicant who was accosted in her home on four occasions by individuals aligned with police who had murdered her uncle and threatened to kill her had sufficiently established past persecution because of the "specific, credible, and immediate threat of death").

by the IJ, but this only establishes that their experiences *might* constitute past persecution, not that they *necessarily* do. Whether an applicant has suffered past persecution is a fact-specific determination that requires an individualized review of the particular facts of the case.[15] On the record before us, we cannot say that the evidence is so compelling that no reasonable factfinder could determine that the harms suffered by the Hussains did not rise to the level of persecution. We conclude that there is substantial evidence to support the IJ's determination that the Hussains did not suffer past persecution.

The Hussains also contest the IJ's determination that they could not establish a clear probability of future persecution on a protected ground. In reaching that conclusion, the IJ noted that the motives for harassing the Hussains are mixed, but found that the "criminal intent to deprive the [Hussains] of property and money is the central reason" for targeting them. The Hussains argue that the IJ incorrectly determined that their status as Ismailis was not a central reason for persecution. We conclude that there is substantial evidence to support the IJ's finding that money, and not the Hussains' status as Ismailis, was the central reason for targeting them.

The State Department International Religious Freedom Report for 2010 cited by the IJ in his decision states that Ismailis reported facing resentment due to their comparative economic well-being. Noorali Hussain confirmed this during his testimony, explaining that many Ismailis have met with more financial success than others in Pakistan and that Sunnis are jealous of Ismailis for this reason. Many of the events recounted by Noorali Hussain—

---

[15] *See, e.g., In re J-H-S-*, 24 I. & N. Dec. 196, 200-01 (BIA 2007) (noting that "[w]hether more severe economic sanctions can rise to the level of persecution is a question best addressed on a case-by-case basis").

e.g., the threats he received from the MQM and the Jamat-i-Islami, the robberies committed against Khatidja Hussain, and the attempted kidnapping of his son Aman—prominently featured the acquisition of money as an objective. Indeed, Noorali Hussain testified that once he gave money to the MQM, he was targeted by other groups who became aware that they could obtain money from him. To the extent that the Hussains were targeted as a result of being Ismaili, Noorali Hussain's testimony supports a finding that their religious affiliation was secondary to the fact of their wealth and was important largely as a proxy for being financially successful. This comports with reports in the record that groups like the MQM fund themselves through criminal activity, including kidnapping and the type of extortion to which Noorali Hussain was subjected. Finally, Noorali Hussain conceded at the hearing before the IJ that Sunni businesses might have been approached as well. He surmised that if that had occurred, the businesses had managed to turn those involved in the extortion schemes onto the Hussains' business instead because he was Ismaili. However, at best, this shows that the primary focus was to obtain money from local businesses and that Noorali Hussain's status as an Ismaili was only secondary. Thus, the evidence in the record is not so compelling that no reasonable factfinder could conclude that the Hussains' status as Ismailis was not a central reason for persecution.

## III

In addition to deeming the Hussains ineligible for withholding of removal based on persecution, the IJ also denied the Hussains' application for protection under the CAT. Like withholding of removal, eligibility for CAT protection is a factual determination that we review under the substantial evidence standard.[16] To qualify for withholding of removal under the CAT, an

---

[16] *Zhang v. Gonzales*, 432 F.3d 339, 344 (5th Cir. 2005).

applicant must establish that it is more likely than not that he will be tortured if he returns to his home country.[17]

> Torture is defined as any act by which severe pain or suffering . . . is intentionally inflicted on a person . . . for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.[18]

This court has directed that, along with other evidence, four factors in particular should be considered: (1) "[e]vidence of past torture inflicted upon the applicant;" (2) "[e]vidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;" (3) "[e]vidence of gross, flagrant or mass violations of human rights within the country o[f] removal, where applicable; and" (4) "[o]ther relevant information regarding conditions in the country of removal."[19]

The IJ found that (1) there was no evidence of any past torture of the Hussains, (2) relocation would be difficult, but was not a controlling factor, (3) while there were a substantial number of human rights violations and cases of torture in Pakistan, they occurred primarily in the custody of security forces, and (4) although security forces and police are unable to control factions in Pakistan that might cause serious harm, this did not equate to acquiescence to torture. The IJ also noted there was no evidence to suggest that the Hussains would be held in custody and tortured with the acquiescence of the Pakistani government.

The Hussains point to the State Department's 2010 Report on Human Rights Practices in Pakistan, which states that Pakistani police and courts

---

[17] 8 C.F.R. § 1208.16(c)(2); *Zhang*, 432 F.3d at 344-45.

[18] 8 C.F.R. § 208.18(a)(1).

[19] *Tamara-Gomez v. Gonzales*, 447 F.3d 343, 350 n.11 (5th Cir. 2006).

often fail to protect religious minorities, and that the police sometimes commit human rights abuses. Based on this, the Hussains assert that "it is clear that non-Sunni Muslims in Pakistan are far more likely to be tortured by government agents or individuals the Pakistani regime refuses to control." As the IJ noted, the section of the State Department's report addressing torture in particular explains that torture does occur among individuals in the custody of police and security forces; however, the report indicates that many of these instances of torture were met with condemnation by the government and courts, and resulted in arrests and court cases against the officials involved. Moreover, even if the Hussains were correct that religious minorities are more likely than others to face torture, this does not establish that it is *more likely than not* that they *actually will be* tortured, much less that the Hussains in particular are more likely than not to be tortured if they are removed to Pakistan.

The Hussains also contend that the evidence shows that the Pakistani government is not opposed to using torture. The IJ acknowledged this when he discussed the State Department's report, which identified a significant increase in the total number of torture and rape cases. However, as the IJ noted, the report also indicates that the torture generally occurred when the victim was in the custody of security forces, and the Hussains have presented no evidence to suggest that they will be taken into custody and subjected to torture. Thus, there is substantial evidence to support the IJ's determination that the Hussains are ineligible for protection under the CAT.

\* \* \*

For the foregoing reasons, the petition is DENIED.