United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 1, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 04-60375
_____

YI WU ZHANG,

Petitioner,

versus

ALBERTO R. GONZALES, United States Attorney General,

Respondent.

Petition for Review of a Final Order of Removal Entered by the
Board of Immigration Appeals

Before REAVLEY, HIGGINBOTHAM, and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Yi Wu Zhang petitions for review of an order of the Board of Immigration Appeals denying

his application for asylum, withholding of removal, and protection under the Convention Against

Torture.

I

Petitioner Yi Wu Zhang ("Zhang"), a citizen of the People's Republic of China, entered the

United States without inspection. The former Immigration and Naturalization Service ("INS") issued

a Notice to Appear ("NTA") to Zhang, charging him with deportability under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled. At a hearing before an immigration judge ("IJ"), Zhang conceded that he was removable as charged but requested asylum, withholding of removal, and protection under the Convention Against Torture[1] based upon his status as a practitioner of Falun Gong, "a movement that professes to help its practitioners gain self-understanding through spiritual and physical development." *Zhao v. Gonzales*, 404 F.3d 295, 300 (5th Cir. 2005).

On February 4, 2003, the IJ conducted a hearing at which Zhang testified and was given the opportunity to submit evidence in support of his claims. He asserted that, after being introduced to Falun Gong in March 2001, he periodically met with others to read books, study, and "practic[e] different things" related to Falun Gong. In October 2001, Chinese police allegedly arrived at his home with an arrest warrant and took him to the police station where they handcuffed Zhang to a window for three hours, beat him, and forced him to promise that he would no longer practice Falun Gong. After twenty days in prison, the police released him. In January 2002, Zhang left China and settled in Dallas, Texas, where he purportedly resides with other practitioners of Falun Gong. At his hearing, Zhang produced an unverified copy of a Chinese arrest warrant that he asserts is from his October 2001 arrest. Zhang also testified that he feared returning to China because he would be arrested and persecuted.

After considering the evidence, the IJ denied his applications for asylum, withholding of

---

[1] The United Nations Convention Against Torture and other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85 [hereinafter Convention Against Torture]. *See* Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, Div. G, § 2242(b), 112 Stat. 2681 (1998).

removal, and relief under the Convention Against Torture, stating that "the Court just, quite frankly, doesn't believe this story and believes it's probably cooked up or, at the very least, exaggerated." The IJ did not credit Zhang's claims that he was a practitioner of Falun Gong, that he was persecuted, or that he feared persecution if forced to return to China. Specifically, the IJ doubted Zhang's claim that he practiced in a front yard in China because such a practice would be easily discoverable by Chinese authorities who were purportedly attempting to suppress Falun Gong activity. The IJ also noted that Zhang's testimony was simplistic, virtually identical to his written statement, and without the additional persuasive weight of separate detail. Given these credibility concerns, the IJ was "struck by [Zhang's] failure to be able to produce either his friends or at least some sworn statement by them in writing to corroborate his testimony" that Zhang was a practitioner of Falun Gong and a victim of persecution.[2]

## II

Zhang challenges the IJ's factual finding that his testimony was not credible, noting that he testified in Mandarin Chinese and that the translation may not have been precise. He argues that, if his account of Falun Gong and his persecution was simplistic, it is only because "the truth is 'simple.'" Zhang argues the merits of his case as well, stating that there is a probability of persecution and torture if returned home "[b]ecause so many other Falun Gong practitioners [have been] arrested and tortured" and because he will be punished for leaving the country unlawfully and for not reporting to the police after his arrest.

Because the Board of Immigration Affairs ("BIA") affirmed without opinion, the IJ's decision

---

[2] In the alternative, the IJ determined that the treatment Zhang allegedly received did not constitute persecution such that he could have a reasonable fear that he would suffer additional persecution if he were to returned to China.

became the final agency determination for purposes of this appeal. *Soadjede v. Ashcroft*, 324 F.3d 830, 831-32 (5th Cir. 2003). The agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . . ." 8 U.S.C. § 1252(b)(4)(B). This standard essentially codifies the substantial evidence test established by the Supreme Court in *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004); *Dia v. Ashcroft*, 353 F.3d 228, 247-49 (3d Cir. 2003). "We use the substantial evidence standard to review the IJ's factual conclusion that an alien is not eligible for asylum," *Zhao*, 404 F.3d at 306, withholding of removal, *Zamora-Morel v. INS*, 905 F.2d 833, 838 (5th Cir. 1990), and relief under the Convention Against Torture, *Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 353 (5th Cir. 2002). Under this standard, reversal is improper unless we decide "not only that the evidence supports a contrary conclusion, but [also] that the evidence *compels* it." *Zhao*, 404 F.3d at 306 (quoting *Chun v. INS*, 40 F.3d 76, 78 (5th Cir. 1994)). "[I]t is the factfinder's duty to make determinations based on the credibility of the witnesses." *Id*. (citing *Vasquez-Mondragon v. INS*, 560 F.2d 1225, 1226 (5th Cir. 1977)); *see Mantell v. INS*, 798 F.2d 124, 127 (5th Cir. 1986) ("We will not review decisions turning purely on the immigration judge's assessment of the alien petitioner's credibility."). Still, an adverse credibility determination must be supported by specific and cogent reasons derived from the record. *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004); *Dailide v. United States Attorney Gen.*, 387 F.3d 1335, 1341 (11th Cir. 2004); *Lin v. Ashcroft*, 385 F.3d 748, 751 (7th Cir. 2004); *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004); *Camara v. Ashcroft*, 378 F.3d 361, 367 (4th Cir. 2004); *Qin v. Ashcroft*, 360 F.3d 302, 306 (1st Cir. 2004); *Dia*, 353 F.3d at 249; *Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 658 (9th Cir. 2003).

Zhang seeks asylum, withholding of removal, and protection under the Convention Against

Torture. Asylum is discretionary and may be granted to "an alien who is unable or unwilling to return to his home country 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.' " *Elias-Zacarias*, 502 U.S. at 481 (quoting 8 U.S.C. § 1101(a)(42)(A)). "To establish a well-founded fear of future persecution, an alien must demonstrate a subjective fear of persecution, and that fear must be objectively reasonable." *Zhao*, 404 F.3d at 307 (citation omitted) (internal quotation marks omitted); *see also Lopez-Gomez v. Ashcroft*, 263 F.3d 442, 445 (5th Cir. 2001) (similar). Unlike asylum, withholding of removal does not require a showing that the petitioner has a subjective fear of persecution. *Guevara Flores v. INS*, 786 F.2d 1242, 1250 (5th Cir. 1986). To be eligible, the alien need only demonstrate a "clear probability" of persecution if returned to his home country. *Faddoul v. INS*, 37 F.3d 185, 188 (5th Cir. 1994) (citing *Rivera-Cruz v. INS*, 948 F.2d 962, 966 (5th Cir. 1991)); *see* 8 C.F.R. § 208.16(b) (noting that an alien must show that "his life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion"). Claims based on the Convention Against Torture differ from claims of asylum and withholding of removal because alleged mistreatment need not involve "one of the five categories of race, religion, nationality, membership in a particular social group or political opinion" and because proof of torture, not simply persecution, is required. *Efe v. Ashcroft*, 293 F.3d 899, 907 (5th Cir. 2002). To obtain relief, an applicant must show that it is "more likely than not" that he would be tortured if returned to his home country. *Ontunez-Tursios*, 303 F.3d at 354 (citing 8 C.F.R. § 208.16(c)(2)).

The IJ's denial of Zhang's application for asylum and withholding of removal is supported by substantial evidence; there is no evidence that compels us to find that Zhang was a practitioner of

Falun Gong or that he suffered persecution. Based on the petitioner's own testimony, the IJ could reasonably conclude that Zhang had purportedly practiced Falun Gong for a few months, had little detailed understanding of its practices, and fled after one incident with the police. With doubts regarding his past practice of Falun Gong, the IJ properly noted the absence of any evidence, beyond the unverified subpoena and arrest warrant, supporting Zhang's claim.[3] Specifically, Zhang failed to produce statements or witness testimony affirming that he was a practitioner of Falun Gong or corroborating his claim of arrest and maltreatment. The IJ provided specific, cogent reasons for his adverse credibility determination that we are unwilling to reevaluate on a cold record. *See Efe*, 293 F.3d at 905 ("The panel cannot replace the Board or IJ's determinations concerning witness credibility . . . ."). Without a credible showing that he is a practitioner of Falun Gong, Zhang cannot meet his burden of proving past or future mistreatment on the basis of "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

We treat Zhang's Convention Against Torture claim separately because he need not prove persecution to secure relief, only a likelihood of torture. "Torture is defined as any act by which severe pain or suffering . . . is intentionally inflicted on a person . . . for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1).[4] Zhang argues that he will be sanctioned for not reporting to the police after

---

[3] If credible, an alien's testimony may be sufficient to satisfy his burden of proof without corroboration. 8 C.F.R. §§ 208.13(a), 208.16(b); *see also Abdel-Masieh v. INS*, 73 F.3d 579, 584 (5th Cir. 1996) (indicating that where credibility is not impugned, corroboration is not always necessary).

[4] In deciding whether relief under the Convention is appropriate, the IJ should consider, along with other evidence:

his arrest and for violating Chinese immigration laws. Even if true, we are not compelled to find that it is more likely than not that he would be tortured. The normal incidents of lawful sanctions do not constitute torture, and—beyond his discredited claims of persecution as a practitioner of Falun Gong—Zhang has failed to provide any evidence demonstrating that he will face sanctions during his arrest that are so depraved that they may independently be considered acts of torture. *See* 8 C.F.R. § 208.18(a)(3) ("Torture does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions" but may "include [lawful] sanctions that defeat the object and purpose of the Convention Against Torture to prohibit torture.").

## III

Zhang protests that evidentiary shortcomings in his case were unavoidable because he had insufficient time to prepare. Petitioner's counsel contends that "[t]here was some confusion" about whether a scheduled February 3, 2003 hearing was a "master scheduling hearing" or an "individual hearing" and that, because he believed it to be the former, he did not prepare his case on behalf of his client.[5] Although the IJ continued the case until the next day, Zhang asserts that a continuance of one

(i) Evidence of past torture inflicted upon the applicant;
(ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;
(iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and
(iv) Other relevant information regarding conditions in the country of removal.

8 C.F.R. § 208.16(c)(3).

[5] Immigration court proceedings generally involve an initial "master calendar" hearing and, subsequently, an "individual" hearing. During the master calendar hearing, an IJ advises the alien of the charges against him. During the subsequent individual hearing, the alien and government counsel are afforded an opportunity to argue the merits of the case. At the close of the individual hearing, the IJ typically issues a decision on the merits of an alien's claims. *See generally* U.S. Dep't of

-7-

day did not allow him sufficient time to marshal witnesses or obtain statements supporting his claims. Accordingly, he contends that his due process rights were violated because he did not have an opportunity to "be heard . . . at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (internal citations omitted) (quotation marks omitted).

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993); *see also United States v. Benitez-Villafuerte*, 186 F.3d 651, 656 (5th Cir. 1999) ("Aliens who have entered the United States unlawfully are assured the protection of the Fifth Amendment due process clause."). While the requirements of due process are "flexible and call[] for such procedural protections as the particular situation demands," *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972), the "fundamentals of due process" are notice, hearing, and an appeal. *Harper v. Lindsay*, 616 F.2d 849, 858 (5th Cir.1980); *Nose v. Attorney Gen.*, 993 F.2d 75, 79-80 (5th Cir.1993) (due process includes the right to a hearing before deportation). "[T]he constitutional adequacy of the exact timing and nature of the required hearing must be judged by balancing the competing private and governmental interests at stake." *Haitian Refugee Ctr. v. Smith*, 676 F.2d 1023, 1040 (Former 5th. Cir. 1982).

As an initial matter, Zhang waived this claim because he never requested a continuance or objected to the timing of the hearing. "It is a well-accepted rule that '[a]n appellate court will not review actions of omission or commission by a [lower] court unless the defendant makes known to the court the action which he desires the court to take or his objection to the action taken by the court

Justice, *News Release: Immigration Court Process in the United States, Removal Proceedings, Bond Redeterminations, Asylum, Convention Against Torture*, Apr. 28, 2005, http://www.usdoj.gov/eoir/press/05/ImmigrationCourtProcess2005.htm (last visited Oct. 3, 2005).

and the grounds therefor.' " *Wright v. Hartford Accident & Indem. Co.*, 580 F.2d 809, 810 (5th Cir. 1978) (quoting *United States v. Thomas*, 429 F.2d 407, 408 (5th Cir. 1970)). "Failure to raise a due process objection . . . waives that objection on appeal." *Newby v. Enron Corp.*, 394 F.3d 296, 309 (5th Cir. 2004) (citing *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002)); *see also United States v. Vontsteen*, 950 F.2d 1086, 1089 (5th Cir. 1992) ("No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." (quoting *Yakus v. United States*, 321 U.S. 414, 444 (1944))); *Tr. of Sabine Area Carpenters' Health & Welfare Fund v. Don Lightfoot Home Builder, Inc.*, 704 F.2d 822, 828 (5th Cir. 1983) ("Normally a party who fails to object to trial court errors waives the right to complain of them on appeal.").

Even if not waived, we find that the immigration court gave Zhang the opportunity for a meaningful hearing at a meaningful time because he had ample time to prepare statements, obtain documentary evidence, and marshal witnesses prior to his individual hearing. The INS served Zhang with an NTA on March 8, 2002. The IJ conducted an initial master calender hearing on March 27, 2002. A second hearing was held on June 27, 2002, at which Zhang indicated his intention to apply for asylum. At a third hearing on August 19, 2002, Zhang's counsel asked for more time to prepare an application for asylum because he was waiting for information from Zhang. The IJ granted a continuance until October 28, 2002. At this fourth hearing, Zhang submitted his application for asylum. The IJ then set a further hearing for February 3, 2003. Zhang's counsel failed to appear for this fifth hearing, and the IJ continued the case until the next day. On February 4, 2003, the IJ heard argument, reviewed the evidence, and denied Zhang's applications. On the record before us, Zhang received notice of the proceedings against him and the opportunity to participate in five separate

hearings. After submitting his application for asylum, Zhang had three months to prepare his case prior to the next scheduled hearing.[6] In this case, the IJ's failure to afford petitioner additional time to prepare, *sua sponte* and without notice of any possible prejudice to the applicant, was not a violation of due process.

## IV

For the reasons stated, we DENY the petition for review.

---

[6] Given the posture of the case, we find Counsel's asserted belief that the February 3, 2003 hearing was a master calender hearing untenable. The IJ had already conducted an initial master calender hearing as well as multiple additional status hearings. After submitting Zhang's application for asylum, he should have expected the next hearing to be on the merits. If he had doubts, Counsel should have investigated further, rather than assume otherwise and fail to appear.