# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 30, 2009

No. 08-61104
Summary Calendar

Charles R. Fulbruge III
Clerk

DONG LIN

Petitioner

v.

ERIC H. HOLDER, JR., U. S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A94-798-532

Before HIGGINBOTHAM, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Dong Lin, a native and citizen of China, has filed a petition for review of the Board of Immigration Appeals ("BIA") decision affirming an immigration judge's (IJ) decision to deny his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). For the reasons explained herein, this petition is DENIED.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

BACKGROUND

In August 2006, Immigration and Customs Enforcement ("ICE")[1] issued a Notice to Appear alleging that Dong Lin was a native of China, that he entered the United States in June 1999 with the intent to stay, and that he did not then, and does not now, possess valid entry documents. Thus, the Notice to Appear charged that Lin was subject to removal as an alien illegally present in the United States. Prior to a hearing, Lin conceded all allegations in the Notice to Appear and requested withholding of removal or asylum on the basis of religious persecution. Specifically, Lin claimed that he was persecuted in China because of his membership in an "underground" Christian church not approved by the government, and that he would likely be persecuted in the future if he were removed to China.

A hearing was held before an IJ on July 17, 2006, in which Lin testified that he first came into contact with Christianity in 1997 when he joined a non-government-sanctioned church in China. In 1998, police raided the church while Lin was attending a meeting. Lin claimed that he was hit with a police baton and that he scraped his leg when a police officer pulled him through a window. After the raid, Lin testified that he and approximately seventeen other congregants were taken to jail. Lin claimed that, while in jail, he was slapped, made to squat until his legs went numb, had water poured on his head, and had a hot lightbulb put close to his head. He also testified that he was forced to sit in a broken chair and was told that he would be beaten if he fell. When he did fall, Lin testified that his interrogators brutally kicked him. Lin claimed he was

---

[1] The enforcement functions of the Immigration and Naturalization Service (INS) were transferred to ICE within the Department of Homeland Security in March 2003. 6 U.S.C. § 251. However, the Notice to Appear in the instant case was issued on INS forms.

interrogated and kept in a cell with no lights for two days. On the third day he was released after his father paid 5,000 RMB to a Mr. Wong who worked for the Public Security Bureau. Lin testified that he later learned some of the other congregants detained during the raid were sentenced and put in jail.

Lin testified that following his release from jail, he no longer attended church. However, he claimed police officers continually came to his parent's house to question them about his involvement in the underground church and to accuse Lin of being counterrevolutionary. Lin testified that he and his father were concerned for Lin's well-being and his future in China, so his father arranged for a snakehead to smuggle Lin into the United States. He arrived in San Francisco in June of 1999.

On September 28, 2007, the IJ issued an opinion in which he concluded that Lin's testimony lacked credibility, because his actions upon arriving in the United States were "entirely inconsistent" with his claim that he left China as a result of religious persecution. In particular, the IJ noted:

> [Lin] came to the United States in June of 1999 and simply put his religious activity on hold for period of more than four years. The Court believes that what actually motivated respondent to come to the United States was what he and his father said, and that is that he had concluded he "had no future in China." Respondent's testimony establishes that the first thing on his mind upon arrival in the United States was finding employment and being able to have three meals a day. While that is certainly understandable and it is [–] certainly should be, perhaps [—] a human's first order of priority, if the person is fleeing religious persecution and that persecution and that fear are so strong to cause that person to move 8,000 miles away from home and leave family, friends, and everyone that he knows, the Court would expect him to resume his religious activities within a reasonable period of time after getting free from the religious interference.

The IJ also found the following additional reasons as being supportive of his adverse credibility finding: (1) Lin did not attend church locally or in other areas of China in the year between the police raid and his entrance into the United States; (2) Lin claimed he preferred the underground church because the government-sanctioned church did not permit congregants to testify or give witness. However, there was no evidence that Lin ever engaged in either activity in China or the United States; and (3) Lin had not baptized his young daughter because he intended to permit her to choose her own religion, which, as the IJ noted, is "pretty significantly at variance with Christian religious doctrine."

Based on his finding that Lin's testimony was not credible, the IJ concluded that Lin failed to establish that it is more likely than not that he would be persecuted because of his religion if he were removed to China. Therefore, his application for withholding of removal was denied. In addition, the IJ concluded that Lin had not demonstrated that it is more likely than not that he would be subject to torture if removed to China. Accordingly, Lin's application for relief under CAT was also denied. His application for asylum was denied as time barred.

On appeal, the BIA found no clear error in the IJ's adverse credibility findings. It concluded that the IJ properly determined that Lin failed to meet the burden of proof for withholding of removal. In addition, the BIA agreed with the IJ that Lin failed to demonstrate that he was entitled to relief under CAT. Accordingly, Lin's appeal to the BIA was dismissed.

Lin has now filed an appeal in this court challenging the IJ's and BIA's determination that he is not entitled to withholding of removal or relief under

CAT. Lin contends that he credibly established his entitlement to such relief, and that the adverse credibility assessments made by the IJ are not substantially supported by the record.[2]

## STANDARD OF REVIEW

Because the BIA adopted and affirmed the IJ's decision based upon the reason set forth therein, we have authority to review the IJ's decision on appeal. *See Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009). We use the substantial evidence standard to review an IJ's factual conclusion that an alien is not eligible for withholding of removal or relief under CAT. *Zhang v. Gonzales*, 432 F.3d 339, 344 (5th Cir. 2005) (citations omitted). Reversal under this standard is improper unless evidence in the record not only supports a contrary conclusion, but also *compels* such a conclusion. *Id.* (citations omitted); *see* 8 U.S.C. § 1252(b)(4)(B). While it is the IJ's duty to make credibility determinations, "an adverse credibility determination must be supported by specific and cogent reasons derived from the record." *Zhang*, 432 F.3d at 344 (citations omitted).

## DISCUSSION

A. *Adverse Credibility Findings*

Lin contends the IJ's adverse credibility findings were arbitrary, capricious, and constitute an abuse of discretion. He notes that during his testimony he gave a valid explanation for why he did not participate in religious activities during the four years following his arrival in the United States, *i.e.*, his needs dictated that he find employment and a secure way of maintaining a living

---

[2] By not challenging that his asylum application was time barred, Lin has abandoned this challenge. *See Soadjede v. Ashcroft*, 324 F.3d 830, 833 (5th Cir. 2003); *Brinkmann v. Dallas County Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987).

first. However, the IJ's opinion shows that he considered this explanation, yet still determined that Lin's claim that he left China due to religious persecution was not credible.

It may be more likely that a fact-finder would find Lin's claim of past religious persecution more credible if the explanation for his four-year hiatus from religious activities were believed. However, we find that the evidence on the whole would still not *compel* a reasonable fact-finder to find that Lin met his burden to establish that it is more likely than not that he would be persecuted because of his religion if he were removed to China. In addition, the IJ's opinion provides specific and cogent reasons for his adverse credibility finding. Therefore, we conclude that these findings are supported by substantial evidence.

B.    *Relief Under CAT*

Lin also asserts that the IJ erred in determining that his interrogation, and the future threat thereof, did not amount to torture. For the purposes of CAT, torture is defined as

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1). If an applicant's testimony is credible, it alone may be sufficient to sustain the applicant's burden that it is more likely than not that

he would be tortured if removed to the proposed country of removal. 8 C.F.R. § 208.18(c)(2); *Efe v. Ashcroft*, 293 F.3d 899, 907 (5th Cir. 2002).

We need not determine whether the harm Lin claims to have suffered at the hands of his interrogators rises to the level of torture, because we have already determined that the IJ's adverse credibility findings were based on substantial evidence. Since the IJ found Lin's testimony not credible, we conclude the IJ was correct in determining that he failed to establish his eligibility for relief under CAT.

## CONCLUSION

Substantial evidence supports the BIA's determination that Lin failed to establish his eligibility for withholding of removal or the CAT relief. *See* 8 U.S.C. § 1231(b)(3); *Efe*, 293 F.3d at 906-07; *Girma v. INS*, 283 F.3d 664, 666-67 (5th Cir. 2002). Therefore, Lin's petition for review is DENIED.