**Roberto ALARCON, also known as Jorge Alfaro Vargas,
Petitioner**

v.

**Loretta LYNCH, U.S. Attorney
General, Respondent.**

No. 14–60373.

United States Court of Appeals,
Fifth Circuit.

Aug. 7, 2015.

Jorge Alfaro Vargas, Law Office of Donglai Yang, New Orleans, LA, for Petitioner.

Edward John Duffy, Trial Attorney, Tangerlia Cox, Jane Tracey Schaffner, U.S. Department of Justice Office of Immigration Litigation, Washington, DC, for Respondent.

---

340

Before WIENER, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM: *

Roberto Alarcon, a citizen of Mexico, filed a petition for review of the denial by the Board of Immigration Appeals of his applications for withholding of removal and relief under the Convention Against Torture ("CAT"). The petition is DENIED.

"We review the BIA's decision and only consider the IJ's decision to the extent that it influenced the BIA." *Shaikh v. Holder*, 588 F.3d 861, 863 (5th Cir.2009). We review an immigration court's findings of fact for substantial evidence. *Wang v. Holder*, 569 F.3d 531, 536 (5th Cir.2009). We may not reverse an immigration court's factual findings unless "the evidence was so compelling that no reasonable factfinder could conclude against it." *Id.* at 536–37.

Alarcon does not challenge the determination that he did not show eligibility for withholding of removal. Consequently, that determination is not before us. *See Thuri v. Ashcroft*, 380 F.3d 788, 793 (5th Cir.2004) (per curiam).

In September 2009, Alarcon was removed to Mexico under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled. He reentered the United States in March or April of 2012. In October 2012, Alarcon was arrested for domestic abuse battery and child endangerment. This arrest led to his detention by immigration officials. After Alarcon's prior removal order was reinstated, he filed an application seeking relief in the form of withholding of removal and CAT protection.

At the hearing before the IJ, Alarcon testified that he was kidnapped by the Zetas twice, the first time around September 2011, and the second time around March 2012. In September 2011, the Zetas apprehended Alarcon when he was picking up his laundry. They bound him and took him to a security house for questioning. He was placed in handcuffs, which kept tightening and cut into his wrists. He was given "a little bit" of water and was not allowed to sleep. The Zetas also threatened to cut off body parts and to kill him. Alarcon was released three days after his capture.

Alarcon testified that in March 2012, 20 to 30 cartel members arrived at his house armed and dressed "as a SWAT team." They dragged him down the stairs, placed him in the back of a truck, and covered his eyes with duct tape. Alarcon eventually ended up at a security house where the cartel members hit him with the backs of their rifles and slapped him. They asked him if he worked for the DEA or the Mexican army. After six days, Alarcon was released and told to leave Mexico. The cartel gave him time to make travel arrangements and obtain money, and then transported him across the border to a security house in Laredo, Texas. After ten days, he was taken to Houston and released once his wife paid approximately $5,000 or $6,000. Alarcon testified that he did not know why the cartel kidnapped him the second time but that the "only thing [he could] come up with" was that "someone must have told them that I worked for the U.S. DEA and—or the Mexican army...." He noted that it "[c]ould have been just a, a mistake on their part."

Alarcon also testified that the Mexican government was very corrupt and involved

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

with the cartels. When asked why he believed this, he responded, in part, that the cartel spoke "with police face to face" and drove safely through federal police and army guard checkpoints. He noted that the cartel spoke on radios to ask if certain streets were safe and that because the "police was there" when they passed by, "it had to be the police who they were talking to on those two-way radios." Alarcon asserted that the police saw him but did not help him. On cross-examination, Alarcon testified that he did not have any major problems with the cartel from the time he returned to Mexico in 2009 until the first kidnapping. He also testified that he had never been arrested or detained by the Mexican police.

The IJ denied Alarcon's applications for withholding of removal and relief under the CAT. Alarcon appealed to the BIA. The BIA dismissed the appeal. Alarcon now petitions this court for review of the BIA's decision.

Alarcon's principal challenge to the BIA's decision is a factual one. We review a finding by the BIA that an alien is not eligible for CAT protection for substantial evidence. *See Chen v. Gonzales,* 470 F.3d 1131, 1134 (5th Cir.2006). Under that standard, we must affirm unless we decide "not only that the evidence supports a contrary conclusion, but also that the evidence *compels* it." *Id.* (citations and quotation marks omitted).

An alien seeking protection under the CAT must show that it is more likely than not that he would be tortured upon return to his home country. *Zhang v. Gonzales,* 432 F.3d 339, 344–45 (5th Cir.2005). Torture is "any act by which severe pain or suffering ... is intentionally inflicted on a person ... when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). Pro-

tection under the CAT "requires a two part analysis—first, is it more likely than not that the alien will be tortured upon return to his homeland; and second, is there sufficient state action involved in th[e] torture." *Tamara–Gomez v. Gonzales,* 447 F.3d 343, 350–51 (5th Cir.2006).

On whether Alarcon would more likely than not be tortured, the IJ found Alarcon to be credible in his description of events. What the IJ and the BIA did not find, though, is that Alarcon had met his burden of demonstrating that it was more likely than not he would be tortured if returned to Mexico. The BIA noted that there were several periods—between 2009 and 2011, and again for the months between the two incidents of kidnapping by the Zetas—in which Alarcon was unharmed. Additionally, the BIA noted that the two incidents Alarcon described were unrelated. Based on Alarcon's testimony, they could have been the result of "mistaken suspicion or mistaken identity." In determining the likelihood of torture upon return, past torture is only one element to be considered. *See* 8 C.F.R. § 208.16(c)(3); *Tamara–Gomez,* 447 F.3d at 350 n. 11. Thus, the BIA was not persuaded that the two incidents testified to by Alarcon led to a conclusion that he would likely be tortured upon his return. We see no error.

Alarcon also disputes the BIA's determination that he failed to show that the Mexican government acquiesced in his torture at the hands of the Zetas. Because we have held that substantial evidence supports the BIA's ruling that Alarcon would not more likely than not be tortured when returned Mexico, we need not consider the question of governmental acquiescence.

The petition for review is DENIED.