# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 7, 2018

Lyle W. Cayce
Clerk

No. 16-60153

GLADIS NOHEMI SOLORZANO-DE MALDONADO; JENNIFER ARELY MALDONADO-SOLORZANO,

Petitioners

v.

JEFFERSON B. SESSIONS, III, U. S. ATTORNEY GENERAL,

Respondent.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA Nos. A206 763 543, A206 763 544

Before DAVIS, JONES, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Pro se petitioners Gladis Nohemi Solorzano-De Maldonado ("Solorzano-De Maldonado") and her minor daughter, Jennifer Arely Maldonado-Solorzano ("Maldonado-Solorzano"), natives and citizens of El Salvador, seek review of the decision of the Board of Immigration Appeals (the "BIA") affirming the decision of an Immigration Judge ("IJ") denying their

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-60153

applications for asylum and withholding of removal and ordering that they be removed to El Salvador.

The BIA concluded that the petitioners failed to establish that "single women that live alone and are targeted by gangs for sexual abuse" constitute a socially distinct group in Salvadoran society because the petitioners did not "identify any specific evidence or testimony which indicates that Salvadoran society perceives their specific particular social group . . . as a socially distinct group." As a result, the BIA concluded, the petitioners did not establish eligibility either for asylum or for withholding of removal. The BIA also concluded that respondents did not establish eligibility for protection under the Convention Against Torture.

We review the BIA's legal conclusions de novo and its factual findings regarding eligibility for asylum and withholding of removal for substantial evidence.[1] Under the substantial evidence standard, "reversal is improper unless the court decides 'not only that the evidence supports a contrary conclusion, but also that the evidence *compels* it.'"[2] We review the decision of the IJ only to the extent that it influenced the BIA's decision.[3]

On appeal, the petitioners argue that the BIA acted arbitrarily because: (1) petitioners presented substantial evidence to support their claim that society perceives their proposed particular social group to be distinct; and (2) asylum was granted in other cases where women feared violence in their home countries, contending that their situation mirrors that of the petitioners in *Matter of A-R-C-G-*, in which the BIA found that "married

---

[1] *Orellana-Monson v. Holder*, 685 F.3d 511, 517 (5th Cir. 2012); *Zhang v. Gonzales*, 432 F.3d 339, 344 (5th Cir. 2005).

[2] *Orellana-Monson*, 685 F.3d at 518 (quoting *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006)).

[3] *Masih v. Mukasey*, 536 F.3d 370, 373 (5th Cir. 2008).

women in Guatemala who are unable to leave their relationship" can constitute a cognizable particular social group.[4]

To qualify for asylum, an alien must show that she is a person who is outside of her country and is unable or unwilling to return "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."[5] An applicant for asylum "may qualify as a refugee either because he or she has suffered past persecution or because he or she has a well-founded fear of future persecution."[6]  To qualify for withholding of removal, an alien "must demonstrate a clear probability of persecution upon return."[7]  An alien who cannot demonstrate eligibility for asylum also cannot demonstrate eligibility for withholding.[8]

A group is a particular social group within the meaning of the Immigration and Nationality Act if:   (1) members of the group share a common immutable characteristic; (2) the group is sufficiently particular; and (3) the group is socially distinct.[9]  In *Matter of M-E-V-G-*, the BIA clarified that, to meet the "social distinction" requirement, "[t]he members of a particular social group will generally understand their own affiliation with the grouping, as will other people in the particular society."[10]  Additionally, "the issue of social distinction will depend on the facts and evidence in each individual case, including documented country conditions; law enforcement

---

[4] *See* 26 I. & N. Dec. 388, 388 (BIA 2014).

[5] 8 U.S.C. § 1101(a)(42)(A).

[6] 8 C.F.R. § 1208.13(b).

[7] *Roy v. Ashcroft*, 389 F.3d 132, 138 (5th Cir. 2004) (internal quotation marks omitted).

[8] *Orellana-Monson*, 685 F.3d at 522.

[9] *Hernandez-De La Cruz v. Lynch*, 819 F.3d 784, 786–87 & n.1 (5th Cir. 2016).

[10] 26 I & N Dec. 227, 238 (BIA 2014).

statistics and expert witnesses, if proffered; the respondent's past experiences; and other reliable and credible sources of information."[11]

Though the record evidence does establish El Salvador as an extremely dangerous country, the petitioners do not present any evidence that single women living alone targeted by gangs for sexual abuse are perceived as socially distinct by Salvadoran society. Below, petitioners submitted documentary evidence, including the U.S. State Department's Country Report on Human Rights Practices for 2013 in El Salvador and a State Department 2014 El Salvador Travel Warning, that violence, including sexual violence, is widespread in El Salvador. Solorzano-De Maldonado testified that she had been robbed by gang members on a public bus. Petitioners also testified that they had heard of girls whose bodies had been found after being abused and murdered by gang members and that a classmate of Maldonado-Solorzano's, whose step-father was an incarcerated gang member, made oblique threats of violence against Maldonado-Solorzano. In a separate incident, petitioners testified, gang members first robbed them on the street and then attempted to abduct Maldonado-Solorzano, though the gang members did not target a male child present after his mother indicated they carried no money or valuables. In the days following the abduction attempt, petitioners stayed with a friend who feared for their safety; shortly thereafter, petitioners fled El Salvador.

Though disturbing, petitioners' testimony does not demonstrate that Salvadorian society perceives single women targeted for sexual abuse by gangs as a distinct group. The gang members were primarily motivated by monetary gain when robbing Solorzano-De Maldonado on the bus; and she was robbed again before the gang members attempted to abduct her

---

[11] *See Matter of A-R-C-G-*, 26 I. & N. at 394–95.

daughter.   Though assuredly criminal, no evidence established the gang members' motive in their intent to abduct Maldonado-Solorzano.   Moreover, as petitioners testified, gang affiliates target all sections of society for robbery and violence:   Maldonado-Solorzano's uncle was murdered for defying extortion demands from gang members, and another uncle, as well as her father, fled El Salvador to avoid a similar fate.[12]

As mentioned, petitioners also put forward *Matter of A-R-C-G-*, which found that,  under certain circumstances, "married women in Guatemala who are unable to leave their relationship" may be a particular social group, in order to highlight their similarities to the petitioners there.   This case is distinguishable.   The BIA determines the viability of a particular social group on a case-by-case basis,[13] and that a group of married Guatemalan women may be a particular social group does not dictate the same result here, though it may be persuasive.   Unlike in *Matter of A-R-C-G-*, where evidence showed that Guatemala had laws specifically to protect domestic abuse victims and failed to enforce those laws,[14] there is no evidence in the record that there are any particular laws intended to protect single women living alone and targeted by gangs for sexual abuse, though it is noted that laws against rape more generally are poorly enforced.   Nothing here, however, shows that society at large, and not just the petitioners, considered petitioners' proposed particular social group to be a socially distinct group. Accordingly, the evidence presented in this particular case does not compel a contrary conclusion from that reached by the BIA.[15]

---

[12] *Cf. Orellana-Arias v. Sessions*, 865 F.3d 476, 487–88 (7th Cir. 2017) ("But, as we have noted, our immigration laws do not allow for grants for asylum for generalized conditions of crime and poverty within a nation. . . . El Salvador has one of the highest crime rates in the world." (citations omitted)).

[13] *See Matter of A-R-C-G-*, 26 I. & N. at 394–95.

[14] *See id.*

[15] *See Orellana-Monson*, 685 F.3d at 518.

No. 16-60153

The petitioners have also raised new issues before this court that the IJ was a biased, partisan adjudicator and that they should have been granted asylum on humanitarian grounds. We do not consider issues raised for the first time on appeal; these arguments are waived.[16]

For these reasons, the petition is DENIED.

---

[16] *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 344 n.3 (5th Cir. 2007).