**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**FILED**

May 7, 2020

Lyle W. Cayce
Clerk

No. 18-60842
Summary Calendar

YONG-KOOK KIM, also known as Yong-Kock Kim; FENGLIAN LU,

Petitioners,

v.

WILLIAM P. BARR, U. S. ATTORNEY GENERAL,

Respondent.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A087 879 344
BIA No. A089 114 719

Before KING, GRAVES, and WILLETT, Circuit Judges.

PER CURIAM:[*]

Married Chinese citizens Yong-Kook Kim and Fenglian Lu entered the United States in 2009 without having been admitted or paroled. They have filed a petition seeking review of the order from the Board of Immigration Appeals (BIA) denying their applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-60842

Kim and Lu are Chinese natives of Korean descent.  Kim testified that he was arrested after he got into a physical altercation with developers trying to buy his farmland.  According to Kim, the police said that Korean minorities "always pick a fight" and are "always the troublemakers."  The police then beat Kim for about 15 minutes, banging his head against a desk and striking him with a baton.  They accused him of being uncooperative and held him in a cell for five days.

After Kim confessed and agreed to sell his land to the developers, the police fined him 5,000 yuan, released him, and directed him to report to them weekly.  Kim decided to leave China for "a few years" in the hope that things would "settle[] down."

According to Lu, when Kim failed to report to the police as required following his release from custody, the police came to their house looking for Kim to sign papers to convey the property as he had agreed.  Lu told them that she did not know where Kim was, and the police took her into custody.

Lu testified that the police bound her legs and hands to a chair and said many "ugly[,] dirty words" to her.  She claimed that the police slapped her and cursed at her.  They also "kind of shocked [her]" using electric shocks.  Every time Lu tried to fall asleep, the police put her in ice water and "put a big light in [her] face [so] that [she] couldn't sleep."  Lu testified that she was detained for two days.  Once Lu signed the land over to the developers, she was paid 5,000 yuan and released without conditions.

Lu testified that she had to leave China because she lost "all the farmland" due to her Korean ethnicity.  She claimed that she could not return to China because Kim would be detained by the government for refusing to cooperate with them, and they would "most likely" prosecute her for conspiring with her husband.

2

No. 18-60842

We have authority to review only the order of the BIA unless the underlying decision of the immigration judge (IJ) influenced the BIA's decision. *Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009). Here, the BIA approved of and relied on some of the IJ's findings. Accordingly, this court will review both decisions. *See id.*

We review an immigration court's findings of fact for substantial evidence. *Id.* Under this deferential standard, this court may not reverse an immigration court's factual findings unless "the evidence was so compelling that no reasonable factfinder could conclude against it." *Id.* at 536-37.

As an initial matter, the BIA did not reach the issue of whether the police mistreatment that Kim and Lu experienced rose to the level of past persecution. Instead, the BIA focused its analysis on the fact that Kim and Lu had failed to show a nexus between the harm they experienced and a statutorily protected ground.[1] As such, we need not address the arguments that Kim and Lu make on the issue of whether their mistreatment in China amounted to persecution. Yet even if we did, the evidence Kim and Lu presented does not compel the conclusion that the police took them into custody and mistreated them due to their Korean ethnicity or because of their political opinions, imputed or otherwise.[2] *See Wang*, 569 F.3d at 536-37.

---

[1] Kim and Lu reiterate their claim that they "were arguably harmed or could be harmed" on account of their membership in two particular social groups, which they presented to the BIA for the first time on appeal: (1) members of the rural class of the "hukou" system and (2) family (i.e., Lu's membership in Kim's family). This court has held that the BIA is not required to consider a particular social group on appeal that was never presented to the immigration judge. *Cantarero-Lagos v. Barr*, 924 F.3d 145, 151-52 (5th Cir. 2019). Because the BIA chose not to consider Kim and Lu's claim, it is not properly before us on review.

[2] As the BIA noted, Kim was arrested only after he got into a physical altercation with the developers. Lu was arrested because she remained on the property after Kim had agreed to transfer it to the developers. This court has rejected claims of past persecution where the alien was involved in a facially legitimate law enforcement encounter. *Tesfamichael v. Gonzales*, 469 F.3d 109, 117 (5th Cir. 2006). And even if the police used ethnic slurs during Kim's detention, that does not by itself compel the conclusion that they sought to punish him

No. 18-60842

Substantial evidence supports the BIA's finding that Kim and Lu had failed to independently carry their burden to demonstrate a well-founded fear of future persecution. *See id.* at 536. As the BIA observed, none of their relatives in China—who shared their Korean ethnicity—had encountered problems with the police since Kim and Lu left China. Further, the fact that Kim and Lu did not experience any harm at the hand of the Chinese government until they became involved in a dispute with the developers over the price of their land weakens their argument that their fear of harm on account of their Korean ethnicity or any other protected ground is objectively reasonable. *See Chen v. Gonzales*, 470 F.3d 1131, 1135 (5th Cir. 2006).

Because substantial evidence supports the denial of the couple's asylum claim, it follows that the BIA's determination that they are likewise ineligible for withholding of removal should also be upheld. *See Majd v. Gonzales,* 446 F.3d 590, 595 (5th Cir. 2006).

Though Kim argues that he would likely be subject to future torture given that he was under police supervision when he left China and because he violated China's exit laws, we have previously rejected similar CAT claims. *See Zhang v. Gonzales*, 432 F.3d 339, 345 (5th Cir. 2005). In Lu's case, the evidence similarly does not compel the conclusion that it is more likely than not that the Chinese government would go so far as to torture her merely because she unlawfully departed China in 2009. *See id.*

Based on the foregoing, the petition for review is DENIED.

---

based on his Korean ethnicity, especially where nothing else in the record shows that he was singled out by the authorities or subjected to disproportionate treatment while in custody because of his ethnicity. *See INS v. Elias-Zacarias*, 502 U.S. 478, 482 (1992) (requiring petitioner to show compelling "direct or circumstantial" evidence of a discriminatory motive behind the government's persecution). Finally, although Kim depicts himself as a victim of the Chinese government's "land grabs," he cites no evidence that he had any political or principled objection to transferring the farmland, and he admitted that he would have readily sold it to the developers for 10,000 yuan.