# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 17, 2020

Lyle W. Cayce
Clerk

No. 18-60813

Luz Del Socorro Cerritos-Quintanilla; Wilmer
Arnoldo Gomez-Cerritos,

*Petitioners*,

*versus*

William P. Barr, U.S. Attorney General,

*Respondent*.

Petition for Review of the Order of the
Board of Immigration Appeals
BIA No. A206-797-134
BIA No. A206-797-135

Before Higginbotham, Elrod, and Haynes, *Circuit Judges*.

Per Curiam:*

Petitioners Luz Del Socorro Cerritos-Quintanilla and her son, Wilmer Arnoldo Gomez-Cerritos, natives and citizens of El Salvador, petition this court to review the decision of the Board of Immigration Appeals, which affirmed the order of the immigration judge denying their request for asylum

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 18-60813

and withholding of removal. Because there is not substantial evidence to compel the conclusion that Cerritos-Quintanilla's family status was one central reason for her alleged present or future persecution, we DENY Cerritos-Quintanilla and Gomez-Cerritos's petition for review.

I.

In 2014, petitioner Luz Del Socorro Cerritos-Quintanilla and her then-minor son, Wilmer Arnoldo Gomez-Cerritos, natives and citizens of El Salvador, received notices to appear issued by the U.S. Department of Homeland Security. The Department charged them with entering the United States without being admitted or paroled. They admitted the allegations and conceded the charges against them. Cerritos-Quintanilla applied for asylum and withholding of removal, and she included Gomez-Cerritos as part of her application. *See* 8 U.S.C. § 1158(b)(3)(A) ("A spouse or child . . . of an alien who is granted asylum under this subsection may . . . be granted the same status as the alien if accompanying . . . such alien"). In her application, Cerritos-Quintanilla alleged that she left El Salvador because the "gangs" threatened her and her son if they did not pay them money. She later clarified in briefing that she was referring to the "transnational criminal gang syndicate known as the Mara Salvatrucha," also known as "MS-13."

Cerritos-Quintanilla testified that MS-13 told Gomez-Cerritos on two occasions that if he did not join or pay the gang, he would be killed. Cerritos-Quintanilla further testified that the gang told her on two occasions that if Gomez-Cerritos did not join the gang, she would be killed. According to Cerritos-Quintanilla, she did not report the threats to police due to fear of retaliation. Her daughter, Fatima, remains in the same town in El Salvador where Cerritos-Quintanilla previously lived. Gomez-Cerritos did not testify because his counsel and the Department stipulated that his testimony would be identical to that of Cerritos-Quintanilla.

No. 18-60813

At the hearing, Cerritos-Quintanilla's counsel argued that the basis of her asylum and withholding of removal applications was persecution by threats as a member of a particular social group—specifically, the immediate family of her son, Gomez-Cerritos, "consisting of his mother and his . . . brother and sisters." The Department countered that Cerritos-Quintanilla's application was "simply not based on a protected ground."

Although the immigration judge found Cerritos-Quintanilla to be a credible witness, she denied her request for relief. According to the immigration judge, the threats that Cerritos-Quintanilla and Gomez-Cerritos received did not rise to the level of persecution because "[d]iscrimination or a few isolated incidents of harassment or intimidation unaccompanied by physical punishment, infliction of harm or significant deprivation of liberty is not persecution." Thus, she failed to establish a claim of asylum based on past persecution.

Cerritos-Quintanilla also, according to the immigration judge, failed to establish a well-founded fear of future persecution based on a protected ground because her family membership was "not at least one central reason" that she and Gomez-Cerritos were threatened. For purposes of her ruling, the immigration judge assumed that Cerritos-Quintanilla's family membership constituted a particular social group. The immigration judge further noted that "gang recruitment or general resistance to joining a gang is not a sufficient characteristic to establish [Cerritos-Quintanilla] or a person as a member of a particular social group." Overall, the immigration judge found that "any violence, extortion or harassment suffered by [Cerritos-Quintanilla and Gomez-Cerritos] stemmed from criminal motives rather than any political persecution." The immigration judge did not analyze whether Cerritos-Quintanilla's fear of future persecution was objectively or subjectively well founded.

The immigration judge also noted that Cerritos-Quintanilla's daughter, Fatima, remained in El Salvador unharmed and that evidence was lacking that the El Salvadoran government or authorities were unable or unwilling to control the gangs.  As a result, the immigration judge concluded that Cerritos-Quintanilla had not satisfied the requirements for obtaining asylum, and thus she also had not met the higher burden of obtaining withholding of removal.

The Board of Immigration Appeals dismissed her appeal, determining that she was not eligible for asylum or withholding of removal because "[n]either extortion nor resistance to gang recruitment is a basis for asylum." Furthermore, the Board held that Cerritos-Quintanilla did not establish a fear of persecution on account of membership in a group because "targeting family members as a means to an end is not sufficient to establish a claim."

## II.

We review the Board of Immigration Appeal's decision on a substantial-evidence standard, meaning that we may not reverse the factual findings of the Board unless the evidence compels it. *Zhang v. Gonzales*, 432 F.3d 339, 343-44 (5th Cir. 2005).  That is, the evidence must be "so compelling that no reasonable factfinder could conclude against it." *Wang v. Holder*, 569 F.3d 531, 537 (5th Cir. 2009).

"Generally, we review only the final decision of the" Board. *Sealed Petitioner v. Sealed Respondent*, 829 F.3d 379, 383 (5th Cir. 2016).  However, we include in our review the immigration judge's decision when it affects the Board's decision. *Pena Oseguera v. Barr*, 936 F.3d 249, 250 (5th Cir. 2019). Here the Board adopted "the reasons provided in the [immigration judge's] decision," and so we review both decisions.

Cerritos-Quintanilla challenges two factual findings of the Board and the immigration judge: (1) that Cerritos-Quintanilla did not suffer past

persecution; and (2) that Cerritos-Quintanilla's fear of a future persecution was not "on account of" her being a member of her son's family. Cerritos-Quintanilla, however, has not demonstrated that the evidence is so compelling that either of these factual findings is unreasonable.

Cerritos-Quintanilla's argument that she has suffered past persecution centers around MS-13's efforts to recruit Gomez-Cerritos by threatening her, but these threats do not rise to the level of persecution that would merit either asylum or cancellation of removal. "Persecution cannot be based on 'mere denigration, harassment, and threats.'" *Tesfamichael v. Gonzales*, 469 F.3d 109, 116 (5th Cir. 2006). Cerritos-Quintanilla does not allege that MS-13's death threats were accompanied by violence, and, without something more, the evidence does not compel the conclusion that Cerritos-Quintanilla has suffered persecution. *Trochez Castellanos v. Barr*, 816 Fed. Appx. 929, 933 (5th Cir. 2020).

Furthermore, this case simply does not implicate an issue of conflation like the one we addressed in *Pena Oseguera*. *See* 936 F.3d at 251. Cerritos-Quintanilla is the primary asylum applicant, and she included her son Gomez-Cerritos as part of her application. 8 U.S.C. § 1158(b)(3)(A). As a result, Cerritos-Quintanilla and Gomez-Cerritos's applications for asylum and cancellation of removal, as well as their appeals, both rise and fall on Cerritos-Quintanilla's eligibility for asylum. MS-13's reasons for threatening Gomez-Cerritos must not be conflated with its reasons for threatening Cerritos-Quintanilla. *Cf. Pena Oseguera*, 936 F.3d at 251. They have not been conflated in this case. Counsel for Cerritos-Quintanilla explicitly recognized this point in oral argument, saying "we are also not claiming anything like *Pena-Oseguera* that there was a conflation of facts between the mother and the son."

Unfulfilled death threats, nevertheless, also raise the issue of future persecution. *Cf. Trochez Castellanos*, 816 Fed. Appx. at 933–34. To prove a well-founded fear of future persecution, an applicant must show "(1) a subjectively genuine and objectively reasonable fear of persecution that is (2) on account of a protected ground." *See Zhao v. Gonzales*, 404 F.3d 295, 307 (5th Cir. 2005); 8 C.F.R. 1208.13. In her brief, Cerritos-Quintanilla identifies the relevant protected ground as "membership in a particular social group" consisting of the "immediate family members of Wilmer Gomez[-]Cerritos," her son. For purposes of argument, we assume, without deciding, that a nuclear family can be a social group for purposes of asylum applications.

The immigration judge concluded that Cerritos-Quintanilla "failed to demonstrate or establish that there is a requisite nexus between any persecution, past or future, and a protected ground." The evidence does not compel a contrary conclusion, especially considering the situation of Cerritos-Quintanilla's family remaining in El Salvador. The record indicates that Cerritos-Quintanilla's daughter still lives in El Salvador in the same town where Cerritos-Quintanilla and her son were threatened by MS-13. In a letter filed under Federal Rule of Appellate Procedure 28(j), Cerritos-Quintanilla urges us to consider the circumstances in *Gonzalez Ruano v. Barr* to determine that Cerritos-Quintanilla's membership in her son's family is "one central reason" for her fear of future persecution. 922 F.3d 347 (7th Cir. 2019); *see also Shaikh v. Holder*, 588 F.3d 861, 864 (5th Cir. 2009). In *Gonzalez Ruano*, the petitioner was kidnapped and tortured by gang members after the gang leader claimed ownership of petitioner's wife; Petitioner's sons were also threatened. 922 F.3d at 349–51, 356. Petitioner, his wife, and his sons fled to the United States. *Id.* at 351. Petitioner's sister did not leave the country, and, in the five months after Petitioner fled, she was approached twenty times by unknown men asking about Petitioner's location. *Id.*

While the facts of *Gonzalez Ruano* and this case share loose similarities—in each instance, the petitioner's alleged persecution arose from a gang's interest in a family member, and some family remained in the home country following the petitioner's flight—Cerritos-Quintanilla's situation lacks evidence that would compel a finding that the alleged persecution is "on account of" her membership in a family. There is no evidence in the record that any family members other than Cerritos-Quintanilla were threatened. There is no evidence that the daughter remaining in El Salvador has been harmed, threatened, or even approached by MS-13 members there.

Our precedent binds us to a deferential review of the Board's factual determinations. *Zhang*, 432 F.3d at 343-44. To reverse the Board on an issue of fact, the evidence must be "so compelling that no reasonable factfinder could conclude against it;" reasonable disagreement as to the result simply will not suffice. *Wang*, 569 F.3d at 536–37. Absent from the record is evidence sufficient to compel the conclusion that "one central reason" Cerritos-Quintanilla received death threats from MS-13 is that she is part of Gomez-Cerritos's family. *See* 8 U.S.C. § 1158(b)(1)(B)(i). The lack of evidence of others in Gomez-Cerritos's family being similarly threatened subjects that conclusion to reasonable disagreement and prevents us from disturbing the Board's decision denying the application for asylum.

Because Cerritos-Quintanilla failed to meet her burden for establishing eligibility for asylum, she also failed to meet her burden for cancellation of removal. As the immigration judge correctly noted, the "clear probability" standard for cancellation or removal is higher than the well-founded fear" standard for eligibility for asylum. *Efe v. Ashcroft*, 293 F.3d 899, 906 (5th Cir. 2002). Failure to meet the lower standard for asylum eligibility necessarily means failure to meet the higher standard for cancellation or removal.

No. 18-60813

Cerritos-Quintanilla and Gomez-Cerritos's petition for review is DENIED.