# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 15, 2012

No. 11-60043

Lyle W. Cayce
Clerk

LIU XIU FANG,

Petitioner

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals

Before JONES, Chief Judge, PRADO and SOUTHWICK, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:[*]

Petitioner Liu Xiu Fang ("Liu") petitions for review of an order of the Board of Immigration Appeals ("BIA") dismissing her appeal from the order of an Immigration Judge ("IJ") denying her applications for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT"). Liu, who claims that she will be subjected to involuntary sterilization if removed to her native country of China, argues that the IJ and BIA erred in concluding that her testimony was incredible and that she failed to present

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-60043

sufficient evidence to support her eligibility for relief.  For the reasons stated below, we VACATE and REMAND.

## I.  BACKGROUND

Liu, a native and citizen of China, entered the United States without being admitted near Hidalgo, Texas on October 4, 2008.  She was detained and referred to an asylum officer for a credible fear interview.  Liu told the asylum officer that she had fled China because family planning officials were trying to arrest her and force her to undergo involuntary sterilization because she had two daughters.  Liu stated that if she were removed to China she would be forcibly sterilized.  The asylum officer found that Liu demonstrated a credible fear of persecution or torture if removed to China.  On October 16, 2008, Liu was served with a notice to appear that charged that she was subject to removal under section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act for failure to possess the necessary documents required for admission.

Liu conceded her inadmissibility during a hearing before an IJ and applied for asylum, withholding of removal, and relief under the CAT.  In her application, she stated that she was "persecuted by the Family Planning Authority in China because [she] gave birth to two daughters."  She stated that she wanted to have more children and feared that if she were forced to return to China that she would be sterilized.

During the merits hearing on her applications, Liu testified that four months after she and her husband, Mengyao Ruan ("Ruan"), had their first daughter, who was born on December 8, 1995, the family planning officials in China forced her to insert an IUD.  Several years later she removed the IUD and became pregnant with her second daughter, who was born on December 23, 1999.  About a month before her second daughter was born, family planning officials came to her home and notified her that she would be required to undergo sterilization after the birth of her child.  After her daughter was born,

a notice arrived at her home, a copy of which was submitted during the hearing, stating that she was "hereby required to receive [a] sterilization operation in Nanyu Town Hospital on 3/1/2000."

Liu testified that village officials told Ruan that if the couple got divorced, they would no longer be required to be sterilized. On the basis of this advice, the couple divorced, but continued living together. However, Liu testified that family planning officials continued to look for her. She testified that one evening family planning officials came looking for her at the home of her father-in-law, with whom she was living, but that she was able to leave his home without their noticing her. She stated that family planning officials "were looking for [her and Ruan] everywhere," and that because of this the couple "moved constantly."

Liu further testified that some time in 2000—she could not recall the month—village officials destroyed her father-in-law's home and confiscated some of the property kept in the home, including a refrigerator, television, and washing machine.

In 2004, Ruan left China to go to the United States, where he applied for and was granted asylum. Liu remained in China. Liu testified that between 2003 and 2008, family planning officials came looking for her twice—she could not recall the exact dates—but that she was away from home on each occasion.

Ruan, to whom Liu was remarried after her arrival in the United States, also testified during the hearing. His testimony largely corroborated the account given by Liu. Ruan stated that the couple had divorced because they were told that it would relieve their problems with the family planning officials and also because being divorced made it easier for him to get a passport to go to the United States. Ruan also testified about the damage done to his father's home, stating that village officials had "t[aken] the roof off" as a warning to other villagers who might consider having more than one child. He said that furniture and electronics were taken from the home. Ruan authenticated the notice of

No. 11-60043

sterilization as a copy of the original notice that they had received, and he testified that he had given the original to his lawyer to be used during his own asylum proceedings.

During cross-examination, Liu acknowledged that during her credible fear interview, she did not state that she was forced to have an IUD inserted or that her house was damaged and her property confiscated. She also admitted to having been able to obtain an identification card in 2005 from the police department in Lian Jong town without being detained for sterilization.

The IJ denied Liu's applications for asylum, withholding of removal, and relief under the CAT. The IJ determined that Liu had "failed to present credible testimony." Of particular importance to the IJ was that Liu had not mentioned the destruction of her home and confiscation of her property to the asylum officer during her credible fear interview or in her asylum application. The IJ noted that Liu answered questions about this incident "with great hesitation" during cross-examination, which stood in contrast to the "great ease" with which she answered the questions of her counsel on direct examination. The IJ also found implausible Liu's claim that she was being pursued by family planning officials given her testimony that she was able to obtain identification documents from government officials during the same period of time.

Liu appealed to the BIA, which dismissed the appeal, finding that the IJ's credibility determination was not clearly erroneous and that Liu had "failed to present sufficient corroborative evidence to establish her eligibility for relief." Liu timely appealed.

## II. STANDARD OF REVIEW

This court has authority to review only the BIA's decision, not the IJ's decision, unless the IJ's decision has some impact on the BIA's decision. *Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009). Where, as here, the BIA adopts and affirms the IJ's findings and conclusions, we have authority to review the IJ's

4

decision. *Id.* We review factual findings for substantial evidence, *id.*, and will reverse those findings only where the evidence compels reversal, *Zhang v. Gonzales*, 432 F.3d 339, 344 (5th Cir. 2005). While it is the factfinder's duty to make credibility determinations, adverse credibility determinations must still be supported by "specific and cogent reasons derived from the record." *Id.*

The REAL ID Act states the guidelines for assessing credibility for applications, like Liu's, filed after the Act's effective date of May 11, 2005. 8 U.S.C. § 1158(b)(1)(B)(iii). It provides:

> Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

*Id.* The testimony of the asylum applicant alone may suffice to sustain her burden of proving that she is a refugee, "but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." *Id.* at § 1158(b)(1)(B)(ii).

## III. DISCUSSION

Liu argues that substantial evidence does not support the IJ's adverse credibility determination. Liu argues that the IJ erred in relying upon omissions and inconsistencies not material to her claim of persecution. However, under the REAL ID Act, IJs may rely upon inconsistencies to make an adverse credibility

determination "without regard to whether an inconsistency . . . goes to the heart of the applicant's claim." *Id.* at § 1158(b)(1)(B)(iii). This argument is therefore without merit.

Liu also argues that the IJ misunderstood the meaning of the inconsistencies and hesitation in her testimony, arguing that these resulted from her lack of understanding and lack of direct knowledge of the facts on which she was being questioned. Notwithstanding these possibilities, it cannot be said that the IJ's determination is unsupported by the record. The record reflects both the inconsistencies in Liu's story and her occasional hesitation in answering questions. The IJ was in the best position to observe Liu's demeanor while testifying and was not required to accept her account as true given her hesitance and inconsistent testimony. *See Wang*, 569 F.3d at 539–40. We therefore conclude that the IJ's adverse credibility determination is supported by substantial evidence.

Liu further argues that the BIA erred in concluding that Liu had not offered sufficient corroborative evidence to establish her eligibility for relief. Liu argues that the BIA should have identified the specific corroborating evidence that it found to be missing. This argument, made without citation to authority, is without merit. *Cf. Yang v. Holder*, 664 F.3d 580, 586–87 (5th Cir. 2011) (noting that this circuit has approved of both the BIA's requirement that asylum applicants submit corroborating evidence and its rejection of applications that fail to meet that requirement).

Finally, Liu urges that the BIA erred in making "no finding as to the weight and probative value of the submitted evidence in the record, including the Chinese official document offered by Liu to show that she would be subject to coercive sterilization procedure if returned."

The notice of sterilization, stating that Liu was required to present herself for sterilization, is arguably the strongest evidence in support of her claim that

No. 11-60043

if she is returned to China, she will be forced to undergo sterilization.  A copy of this notice was offered into evidence during Liu's hearing and was authenticated by her husband as a copy of the original notice that they had received and that he had submitted as evidence during his own asylum hearing.  The BIA's opinion nowhere mentions this evidence.  The BIA's "decision must reflect meaningful consideration of the relevant substantial evidence supporting the alien's claims." *Abdel-Masieh v. INS*, 73 F.3d 579, 585 (5th Cir. 1996).  Given its failure to discuss or even mention the evidence supporting Liu's well-founded fear of persecution by forced sterilization if returned to China, the BIA's decision does not reflect meaningful consideration of Liu's supporting evidence.

## IV. CONCLUSION

We conclude that the BIA erred in failing to meaningfully consider the relevant substantial evidence in support of Liu's claim.  For this reason, the petition for review is GRANTED and the order of the BIA is VACATED and REMANDED for further proceedings consistent with this opinion.