# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-60726
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
August 17, 2017

Lyle W. Cayce
Clerk

TINGTING YE,

Petitioner,

v.

JEFFERSON B. SESSIONS, III, U.S. ATTORNEY GENERAL,

Respondent.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A206 124 761

Before REAVLEY, OWEN, and ELROD, Circuit Judges.

PER CURIAM:*

Tingting Ye, a professing Christian and a native citizen of the People's Republic of China, petitions for review of a decision by the Board of Immigration Appeals. The Board's decision upheld the Immigration Judge's determination that Ye was not eligible for asylum, withholding of removal, or relief under the Convention Against Torture. Because we conclude that the Immigration Judge's and Board's decisions were not based on a full and fair

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-60726

consideration of Ye's case, we GRANT the petition for review, VACATE the Board's decision, and REMAND for further proceedings consistent with this opinion.

## I.

Ye testified that she grew up on an island in Fujian, China, where she began attending Christian gatherings at the age of sixteen, and eventually converted to Christianity. Three years after she began attending Christian gatherings, Ye was present at a meeting that was raided by local police. Though Ye escaped arrest, the police confiscated Bibles, destroyed a cross, and arrested meeting attendees, including Ye's aunt, and severely beat those who were arrested.

Ye testified that, after the raid, police came looking for her at her home. Ye went into hiding at the home of her uncle, who lived in another village. A few days later, her mother told her that Ye's photograph had been posted on the village bulletin board, together with pictures of other church members and a notice that those pictured should turn themselves in to the authorities for their crimes. Ye believed that if she stayed on her island she would eventually be jailed and beaten like the other Christians whom the authorities apprehended. On two occasions, Ye went to a government office on the mainland to obtain a passport, but her application was confiscated and she was told that she could not get a passport because she was not allowed to leave her island. Ye concluded from this and from the notice posted in her village that she had been blacklisted for her participation in unauthorized Christian meetings.

Because local authorities were continuing to search for Ye and she could not obtain a passport under her own name, Ye testified that her extended family paid smugglers to obtain a passport for her under a false name, and she

used the passport to flee to the United States. Ye joined a Christian church and was baptized. She testified that she now attends Sunday worship, Sunday school, and a Friday Bible study each week.

Ye filed an application for asylum, withholding of removal, or relief under the Convention Against Torture (CAT), voluntarily disclosing that she fled China on a false passport. A few months later, she was charged with removability on the ground that she was admitted to the United States as a student but had not attended school. Ye admitted the allegations and repeated her request for relief on the grounds of religious persecution.

In support of her application for relief, Ye sought to corroborate portions of the testimony summarized above.  The Immigration Judge admitted letters by two Christians from Ye's village who described how the police raided a Christian meeting on the date Ye specified, confiscated Bibles, broke a cross, arrested and beat Christians, and publicly posted photos identifying Christians. He also admitted a letter from Ye's pastor in the United States, who stated that Ye was active in his church and was planning to be baptized and to become a church member. The Immigration Judge excluded five identifying documents that contained Ye's photo and name on the ground that the English versions of the documents were not accompanied by certifications that the translator was proficient in both languages. Finally, the Immigration Judge heard testimony by Ye's cousin, Ms. Chen, that Chen's mother had told her of the events Ye described; that Chen's mother-in-law, who lives on Ye's island, had shared similar stories of persecution by local authorities; that when Ye came to America she moved in with Chen, talked with her about Christianity, and asked her for help finding a church; that Chen and Ye were baptized together; and that Chen and Ye attended church meetings every Friday and Sunday.

No. 15-60726

The Immigration Judge found that Ye had not demonstrated her eligibility for asylum, withholding of removal, or CAT relief. He acknowledged that the events Ye described "would be enough to establish a case of past persecution." However, the Immigration Judge made a general determination that "the respondent is not a credible witness." The Immigration Judge went on to explain two grounds for denying Ye's application. First, "[s]ince I have found the respondent to be an incredible witness, I will not accept her testimony as to her true identity." Because the record did not contain other evidence corroborating her identity, the Immigration Judge explained, Ye had failed to establish who she was, as required by *Matter of O-D-*, 21 I & N Dec. 1079, 1082 (BIA 1998). *See also Afatika v. Holder*, 312 F. App'x 626, 627 (5th Cir. 2009). Second, "[b]ecause the respondent is not a credible witness, I find that the events that she described did not actually occur and therefore there is no basis to grant asylum [or other relief]."

Ye appealed to the Board of Immigration Appeals, challenging the Immigration Judge's adverse credibility determination in several ways, including on the grounds that it was not supported by the record, ignored corroborating evidence, and characterized her testimony as implausible and inconsistent without adequate reason. The Board dismissed her appeal in a short order that adopted the Immigration Judge's adverse credibility determination. The Board upheld the credibility determination based on "the problems within the respondent's testimony and between her testimony and supporting documents, as identified by the Immigration Judge." In light of this adverse credibility determination, the Board held that it was not unreasonable for the Immigration Judge to reject Ye's petition based on her failure to corroborate the posting of her photograph and summons for arrest with a statement from her mother.

4

No. 15-60726

Ye now petitions for review of the Board's decision and challenges its adoption of the Immigration Judge's adverse credibility determination.

## II.

Because the Board's decision adopts the Immigration Judge's credibility analysis, we review the Immigration Judge's decision as well as the Board's. *See Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009). Although "[t]he testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration," this is only the case "if the applicant satisfies the trier of fact that the applicant's testimony is credible . . . ." 8 U.S.C. § 1158(b)(1)(B)(ii); *see also* 8 C.F.R. § 1208.16(c)(2) ("The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration."). It is the factfinder's duty to make determinations based on the credibility of witnesses, and we cannot substitute our judgment for that of the Board or Immigration Judge with respect to factual findings based on credibility determinations. *Chun v. INS*, 40 F.3d 76, 78 (5th Cir. 1994).

However, we may not accept an adverse credibility determination "blindly." *Kabamba v. Gonzales*, 162 F. App'x 337, 339 (5th Cir. 2006). We review for "substantial evidence" and must assure ourselves that the agency decision was based on a "full and fair consideration of all circumstances" and "reflect[s] meaningful consideration of the relevant substantial evidence supporting the alien's claims." *Zhang v. Gonzales*, 432 F.3d 339, 344 (5th Cir. 2005); *Abdel-Masieh v. United States INS*, 73 F.3d 579, 585 (5th Cir. 1996). An adverse credibility determination will not be upheld if it is "based on pure speculation or conjecture." *Wang*, 569 F.3d at 537. Rather, it "must be supported by specific and cogent reasons derived from the record." *Zhang*, 432 F.3d at 344.

No. 15-60726

### III.

The Immigration Judge concluded that Ye was not credible and that Ye had not provided sufficient corroborating evidence to support her claims. We do not attempt to exhaustively address the Immigration Judge's litany of concerns, but provide the following examples to show that the Immigration Judge relied on speculative and conjectural reasoning and failed to consider all relevant evidence. Given this, we cannot conclude that the Immigration Judge's credibility determination gave "full and fair consideration" of Ye's claim. *See Abdel-Masieh*, 73 F.3d at 585.

The Immigration Judge relied on a series of speculative conclusions regarding the veracity of Ye's faith. For example, the Immigration Judge found that "it would not have been possible" for Ye's pastor to "have made a well-informed decision" about whether Ye "was an actual practitioner." Similarly, the Immigration Judge sought to undercut Ye's religious commitment by criticizing the level of detail she provided regarding her baptism. According to the Immigration Judge, Ye "provided no details about either how the baptism went, what the concepts behind it were, or how she came to the decision to be baptized," and so "th[e] significant conversion that [Ye] indicates that she underwent is not correlated with the level of detail that one would have expected for a person who has gone through such a significant transformation of their personal life." And finally, the Immigration Judge found it implausible that Ye would have decided to be baptized at a church she had only been attending for six weeks. According to the Immigration Judge, because baptism is a "significant event for anybody," it was implausible that Ye would "have reached this decision in this amount of time" because this "is not the timeframe that is normally taken for such a significant event in somebody's life."

6

No. 15-60726

These judgments are wholly unsupported by evidence, and involve speculation wholly outside the proper purview of the Immigration Judge.  The Immigration Judge offered no concrete basis to support its conclusion that Ye's pastor was incapable of assessing the genuineness of Ye's faith, nor did the Immigration Judge provide any reliable basis for concluding that Ye's limited description of baptism and her decision to be baptized somehow fails to correlate with the significance of her conversion. Not that it is proper for the Immigration Judge to assess such a "correlation" in any event. Likewise, the Immigration Judge relied on nothing more than raw conjecture in concluding that the timeframe within which Ye decided to be baptized at her current church does not fit the "normal[ ]" time allotted for significant life events. Not one of these speculative conclusions was based on concrete evidence, and *all* of them involve inquiries into matters emphatically outside the competency of a government administrator. *See Employment Div., Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 887 (1990) ("Repeatedly and in many different contexts, we have warned that courts must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim.").

Other aspects of the Immigration Judge's opinion are also concerning. For example, the Immigration Judge cast doubt on Ye's claim that a Christian gathering she was attending was raided by the Chinese police, but the Immigration Judge failed to consider the letters submitted from two Chinese Christians who corroborated Ye's account of the raid. *See Adjonke v. Mukasey*, 255 F. App'x 914, 915–16 (5th Cir. 2007) (vacating and remanding where BIA failed to take account of letters that would have supported applicant's testimony); *Liu Xiu Fang v. Holder*, 465 F. App'x 338, 342 (5th Cir. 2012) (vacating BIA determination for failure to discuss relevant evidence). Similarly, the Immigration Judge concluded that Ye's testimony regarding the

7

timing of the alleged raid was "highly suspicious" because the alleged raid "immediately followed [Ye's] graduation from high school." According to the Immigration Judge, this close temporal proximity between her graduation— "right at the time when she is trying to decide what to do with her life"—and the alleged raid strongly suggested that Ye fabricated the raid in order to gain passage to the United States for economic reasons. This conclusion, however, is entirely speculative. *See, e.g.*, *Cai Gui Chen v. Filip*, 308 F. App'x 785, 787 (5th Cir. 2009) ("The IJ's suspicion that the Chen family came to the United States for economic reasons only was not based on record evidence and thus did not constitute substantial evidence."). Finally, the Immigration Judge also thought it implausible that Ye had been placed on a "blacklist" due to her involvement in a Christian church, given that the passport authorities did not detain her when she went to obtain a passport. But we have previously held that "[a]pparent inconsistencies in treatment by various government officials provide an insufficient basis to deny asylum where a person has suffered persecution at the hands of some such officials."[1] *Kabamba*, 162 F. App'x at 342.

In assessing an adverse credibility determination, we are mindful that our role is not to substitute our judgment for that of the Board or Immigration Judge, *Chun*, 40 F.3d at 78, but neither will we give our stamp of approval to credibility determinations "based on pure speculation or conjecture." *Wang*, 569 F.3d at 537. We must instead ensure that adverse credibility determinations are grounded in a "full and fair consideration of all

---

[1] The Immigration Judge also criticized Ye for providing "a remarkably little amount of detail" about house gatherings of underground Christians, faulting her for not identifying other participants, disclosing what they discussed at their meetings, what materials they used, where they met, and how far their houses were from one another. In fact, Ye did provide information on these subjects. And in any event, we fail to see the relevance of a failure to volunteer the contents of underground church discussions.

circumstances" and "reflect meaningful consideration of the relevant substantial evidence supporting the alien's claims." *See Abdel-Masieh*, 73 F.3d at 585.

Here, the Immigration Judge—and the Board in affirming the Immigration Judge's ruling—based their credibility determinations on unfounded conclusions regarding whether Ye's pastor could assess the genuineness of her faith, and whether Ye's decision to be baptized and her level of understanding of her faith were correctly "correlated" to the Immigration Judge's view of the impact her conversion should have had in her life. Such matters are well outside the federal government's competency, and these conclusions were not "supported by specific and cogent reasons derived from the record." *Zhang*, 432 F.3d at 344. Likewise, the Immigration Judge's failure to consider the corroborating letters from Christians in Ye's home province and its reliance on a belief that Ye fabricated a story of persecution to fulfill her economic desires do not reflect a "full and fair consideration of all circumstances" and a "meaningful consideration of the relevant substantial evidence supporting the alien's claims." *See Abdel-Masieh*, 73 F.3d at 585.

In summary, the decisions of the Immigration Judge and the Board failed to reflect meaningful consideration of substantial evidence that corroborated Ye's testimony and included numerous findings of fact that are not supported by specific, cogent reasons derived from the record. Given the flaws underlying the Immigration Judge's credibility determination, and because we cannot determine the extent to which these errors influenced the Immigration Judge's determinations as to Ye's credibility and, relatedly, her identity,[2] the Immigration Judge's and Board's rulings cannot stand. *See, e.g.*,

---

[2] Ye authenticated her high school diploma, her junior high school diploma, her elementary school diploma, her residential ID card, and her student ID at the hearing. The Immigration Judge explicitly stated in his decision that he was not excluding these

No. 15-60726

*Adjonke*, 255 F. App'x at 915–16 (vacating and remanding where "not convinced that [petitioner] received full and fair consideration of the circumstances giving rise to his claims").

## IV.

Accordingly, we GRANT the petition for review, VACATE the Board's decision, and REMAND for reconsideration consistent with this opinion.

---

documents based on a failure of authentication. Given that the documents were authentic diplomas and ID cards, the only information that had to be culled from them in order to verify Ye's identity was her photo and her name. The photo obviously did not need to be translated, and the record showed what Ye's name looked like in Chinese so that the Immigration Judge could have recognized it without translation. Moreover, the Immigration Judge could easily have directed the court translator to translate the documents at the hearing so that he could give meaningful consideration to the corroborating evidence Ye attempted to provide.