# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-60048

United States Court of Appeals
Fifth Circuit

**FILED**
June 19, 2018

Lyle W. Cayce
Clerk

FA WANG,

   Petitioner

v.

JEFFERSON B. SESSIONS, III, U. S. ATTORNEY GENERAL,

   Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A087 834 841

Before JOLLY, SOUTHWICK, and WILLETT, Circuit Judges.

PER CURIAM:*

   Petitioner Fa Wang, a native and citizen of China, came to the United States in 2009.  The Immigration Judge denied his application for asylum, withholding of removal, and relief under the Convention Against Torture after finding Wang was not a credible witness when he described religious persecution in China but failed to present corroborating evidence.  The Board of Immigration Appeals affirmed.  We DENY Wang's petition for review.

---

   * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-60048

## FACTUAL AND PROCEDURAL BACKGROUND

Fa Wang entered the United States on a student visa on November 11, 2009.  He has remained since that time, even after his visa lapsed when he discontinued his education.  Wang had recently graduated from high school when he arrived in the United States; he is now 27 years old.  Within two months of arriving in the United States, Wang submitted an application for asylum based on persecution in China for his Christian religion.

Wang described his experiences as follows.  In 2008, Wang was invited to attend a small underground Christian church in China that met in a member's home.  While visiting the house church, Wang met a man who identified another house church with younger members.  Wang switched his attendance.  There were 12 members in this house church, and Wang attended it every week until August 23, 2009.  On August 23, four police officers broke into their gathering and arrested all of the members, confiscated their Bibles, and took them to the Huanghai Police Station.

The police interrogated Wang for about an hour, questioning him about how he practiced his Christian religion.  The police also slapped his face, broke his glasses, and shocked him with an electric baton five times.  The police then detained Wang for eight days until his father paid 1,000 RMB[1] on September 1.  Before releasing Wang, the police required him to sign a statement denouncing his Christian religion.  As conditions of his release, Wang was also required to stop attending the house church, avoid contact with any of the house church members, and report to the police station every week.

---

[1] This is about $160 dollars.  YAHOO! FINANCE, https://finance.yahoo.com/currency-converter/ (last visited April 19, 2018).  RMB, renminbi, is also abbreviated as CNY, Chinese yuan.

No. 17-60048

Shortly thereafter, with the help of his father who hired an agent, Wang obtained a student visa to come to the United States. This success was after two previous attempts to obtain a student visa had failed. After Wang left China, the police continued to look for him, including by questioning his parents. Wang does not report any harm to his parents.

Upon arriving in the United States in November 2009 on his student visa, Wang attended National University and started living in San Diego, California. His attendance at the university ended after one month. He explains that he discontinued his studies because he believed he would be required to return to China upon graduation, which he wanted to avoid. Wang alleges he claimed a desire to study in the United States because he thought he had to do so in order to leave China. In January 2010, two months after arriving in the United States, Wang filed his application for asylum, stating that he faced persecution for his Christian religion in China. When later asked why he did not seek asylum in November when he entered the United States, Wang testified that he "did not know anything here and [he] did not get used to the life here."

In December 2010, the Department of Homeland Security issued a notice to appear, charging Wang with removability because he did not attend school in compliance with the conditions of his status in the United States. Wang admitted the allegations in the notice to appear and conceded removability. On May 12, 2016, a final hearing was held on Wang's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Wang was represented by counsel. Wang was the only witness to testify. At the time, he had a limited ability to understand or communicate in English, and he testified through an interpreter.

3

No. 17-60048

Wang testified about religious persecution in China and his three attempts to come to the United States. He also testified about his life in this country. Of concern to the Immigration Judge, Wang could not remember important details about his life, such as where he had lived or how many jobs he had worked since he arrived. He was uncertain about what states he had lived in although he did testify that he had lived in both Texas and California. Wang explained he had worked many jobs, exclusively at restaurants, and he often lived with his employer. Wang was uncertain in describing his parents' occupations. In response to why he did not know certain facts, Wang testified he had "never been to any foreign country. I have no idea about United States."

As to his religious practices in the United States, he testified that he attended church twice a month. In Texas, he believed that the church he attended was Chinese Gospel Church, which was led by Pastor Liu. Wang testified he feared returning to China because he would be arrested or detained because he was a Christian. He also provided eight exhibits: a notarized certificate of his birth, a notarized certificate of his household register, his Chinese ID card, a police report of his arrest, police report notification, proof of fingerprint, proof of residency, and verification certification. These documents were translated from Mandarin into English, and the translator certified that the translation was correct. Wang did not provide any documents, such as letters, to corroborate his story of persecution in China.

The Immigration Judge denied Wang's applications for asylum, withholding of removal, and relief under CAT. He found that Wang was not credible, that his testimony was "hesitant, circular, non-responsive, [and] in some cases nonsensical," and that Wang had no corroboration. The Board of Immigration Appeals ("BIA") adopted and affirmed the decision. Wang timely filed a petition for review.

No. 17-60048

DISCUSSION

We review both the Immigration Judge's and the BIA's opinions because the BIA adopted the earlier decision. *See Zhu v. Gonzales*, 493 F.3d 588, 593 (5th Cir. 2007). We review factual findings for substantial evidence and legal conclusions *de novo. Id.* at 594. In reviewing the facts for substantial evidence, we consider if the agency's determination was based on a "full and fair consideration of all circumstances" with "meaningful consideration of the relevant substantial evidence supporting the alien's claims." *Abdel-Masieh v. INS*, 73 F.3d 579, 585 (5th Cir. 1996) (citations omitted). Under this standard, we must affirm the agency's determination unless the evidence compels a contrary conclusion. *See id.* "The applicant has the burden of showing that the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion." *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006).

An applicant's testimony alone may be sufficient to obtain relief, but corroborating evidence should be provided if reasonably available. *See Yang v. Holder*, 664 F.3d 580, 586 (5th Cir. 2011). The applicant must persuade the factfinder that his "testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii). The factfinder must make a determination on the credibility of the witness. *See Efe v. Ashcroft*, 293 F.3d 899, 905 (5th Cir. 2002). In making adverse credibility determinations, immigration judges frequently rely on inconsistencies, inaccuracies, and falsehoods, even if inconsequential. *See Wang v. Holder*, 569 F.3d 531, 537 (5th Cir. 2009). Although we cannot substitute our judgment for that of the factfinder, we will not uphold an adverse credibility determination that is "based on pure speculation or conjecture" because "an adverse credibility determination still 'must be

supported by specific and cogent reasons derived from the record.'" *Id.* (quoting *Zhang v. Gonzales*, 432 F.3d 339, 344 (5th Cir. 2005)).

Wang seeks asylum, withholding of removal, and relief under CAT. The Attorney General has discretion to grant asylum. *See* 8 U.S.C. § 1158, *et seq.* To obtain asylum, an applicant must first qualify as a "refugee," which is an alien that is unable or unwilling to return to his home country because he has been persecuted or has a well-founded fear of future persecution on account of his "race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). An applicant has a well-founded fear if he has a subjective fear of persecution that is objectively reasonable. *Zhao v. Gonzales*, 404 F.3d 295, 307 (5th Cir. 2005). For withholding of removal, an applicant must show a "clear probability" of persecution in his home country on account of race, religion, nationality, membership in a particular social group, or political opinion. *Zhang*, 432 F.3d at 344. Unlike asylum or withholding of removal, a CAT claimant must show that it is "more likely than not" that he will be tortured if forced to return to his home country. 8 C.F.R. § 208.16(c)(2). The claim need not be based on race, religion, nationality, membership in a particular social group, or political opinion. *Zhang*, 432 F.3d at 344.

Wang argues that there was substantial evidence supporting his claim that he was persecuted before leaving China and he has a well-founded fear of persecution if he returns. He further argues that the Immigration Judge wrongfully speculated that his motivation for leaving China was to find economic opportunity rather than to avoid religious persecution. He clarifies that although he did want to leave China prior to being persecuted, the persecution "accelerated his plan to leave China," which is not inconsistent with his prior desire to leave China. He further argues that no specific

inconsistency was identified regarding his conversion to Christianity and persecution in China because of his religion. Wang contends that his exhibits supporting his claim of persecution in China were authenticated in court. He further explains that obtaining a corroborating letter from his father would have been difficult because his father is still in China. Finally, he provides reports showing that Christians are persecuted in China.

The Government counters that there is no evidence in the record that compels reversal of the BIA. We often have upheld the BIA's adverse credibility determinations because of factual inconsistencies and omissions in a petitioner's testimony. For example, we agreed with the adverse credibility determination and denied relief where a petitioner disavowed membership in a political group and then stated that he had always been a member of the group. *Singh v. Sessions,* 880 F.3d 220, 223, 226 (5th Cir. 2018). We also denied relief when a petitioner failed to provide corroborating evidence without any explanation for the lack of corroboration from family and friends. *Diaz Flores v. Ashcroft*, 104 F. App'x 418, 419 (5th Cir. 2004). Though the latter decision is not precedential, we agree with its conclusion that the absence of corroboration can be suspicious.

Although Wang's testimony has been fairly consistent, it contains significant omissions. He was uncertain of where he has lived, worked, and attended church since arriving in the United States. The Immigration Judge made an adverse credibility determination in part because Wang "made several misstatements on his application and in his testimony, particularly concerning his place of residence, his places of employment, and his places of education." In fact, Wang did not provide evidence of employment records or evidence supporting his statement that "he attended many Christian churches in the United States." Most strikingly, the Immigration Judge found that

No. 17-60048

Wang was "unable to give the name" of any church he attended in the United States.  Also noted were inconsistencies in Wang's testimony about his residency in the United States.  In addition, the Government argues that corroborating evidence of various assertions was reasonably available yet not provided.  Wang fails to explain why he did not obtain a letter from his parents or from someone at his church in the United States, which Wang implicitly admits he could have done when he wrote in his appellate brief that "perhaps he should have obtained a letter from his parents" and "evidence of his church attendance in the United States."  Even if some of his uncertainties could be explained by Wang's difficulties with English, an adverse credibility determination was justified.

There also were less defensible reasons for the credibility finding, reasons similar but distinguishable to those in another petition for review.  *See Ye v. Sessions*, 695 F. App'x 785, 786 (5th Cir. 2017).  Though that decision is not precedential, we see no error in it.  There, we granted the relief after concluding the BIA's decision did not reflect meaningful consideration of the evidence by the same Immigration Judge as heard Wang's case.  *Id.* at 790.  In *Ye*, this Immigration Judge improperly speculated about the sincerity of Ye's conversion to Christianity.  *Id.* at 788–89.

As to Wang, in addition to the credibility concerns that were reasonable, the Immigration Judge found the timing of Wang's participation in the Chinese house church to be "highly suspicious" and "convenient."  Further speculation was that "[l]uckily for [Wang], he was arrested by the police right at the time he was trying to figure out a way to come to the United States."  Though improperly speculative, these findings do not dominate the credibility analysis as the panel in *Ye* concluded was the case there.  Even when we doubt the propriety of some of the credibility findings, we agree it is proper to affirm if

8

No. 17-60048

other reasons are sound and "there is no realistic possibility that, absent the errors, the [Immigration Judge] or BIA would have reached a different conclusion." *See Yang v. Gonzales*, 496 F.3d 268, 272 (2d Cir. 2007) (quoting *Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 401 (2d Cir. 2005)).

We sustain the credibility finding here. First, we distinguish *Ye.* Wang provided considerably less corroboration for his story than did Ye. Ye obtained letters from her house church in China that confirmed the police raid there; she provided a letter from her pastor in the United States corroborating that she practiced her religion in this country; Ye also provided a witness at her hearing that corroborated her story. *Ye*, 695 F. App'x at 787.

Equally important, there was substantial support for the Immigration Judge's adverse credibility decision as to Wang that was independent of the improper speculation. Thus, we are convinced a remand would not alter the Immigration Judge's or BIA's findings on credibility, which are owed "great deference." *Efe*, 293 F.3d at 903.

We are to deny a petition for review unless "the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion." *Chen*, 470 F.3d at 1134. On this record, a reasonable factfinder could conclude that Wang was not a credible witness and thus not entitled to asylum, withholding of removal, or CAT relief.

PETITION DENIED.